## Ex parte JESS HOLLINS.

No. A-8449. Sept. 9, 1932.
(14 Pac. [2d] 243.)

John J. Carney, for petitioner.

Owen & Looney, Paul N. Lindsey, and Clyde J. Watts, amici curiae.

J. Berry King, Atty. Gen., Gus Rinehart, and Sebe Christian, Co. Atty., for respondent.

CHAPPELL, J. Jess Hollins filed his petition in this court for a writ of habeas corpus, alleging that he was illegally restrained of his liberty by S. E. Brown, warden of the penitentiary at McAlester, and that he is confined in such penitentiary.

Petitioner alleges that the proceedings, judgment, and conviction are void for want of due process of law.

The facts in the case appear to be that on the 26th day of December, 1931, rape by force was committed upon the person of one Alta McCollum, an unmarried female of the age of 17 years; that on the 28th day of December, 1931, petitioner was arrested upon a warrant issued by E. H. Snider, a magistrate in the city of Sapulpa, charged with that offense, and was arraigned on the same day; that he requested a preliminary hearing and the same was set for January 2, 1932, before such magistrate; that on the 30th day of December, 1931, the magistrate, on being informed by the county attorney that the petitioner desired to waive preliminary hearing, went to the county jail and there received what purported to be a waiver by petitioner of preliminary hearing, and thereupon he was ordered to appear in the district court without bond; that on the same day and after an order of commitment had been filed with the clerk of the district court, the county attorney filed an information against petitioner charging him with rape by force; that on the same day and at about 7:30 o'clock in the nighttime, the judge of the district court convened court for the purpose of arraigning petitioner and to receive his plea to the charge of such in-

formation; that petitioner was not represented by counsel either before the magistrate or in the proceedings had in the district court.

The court clerk's minute record shows the following proceedings to have been had on December 30, 1931:

"State of Oklahoma v. Jess Hollins. 3456.

"Defendant arraigned in open court. Information read and defendant states his true name to be Jess Hollins. Defendant waives time to plead and enters a plea of guilty. Defendant waives time for sentence. It is the judgment and sentence of this court that the defendant Jess Hollins suffer the penalty of death in the electric chair at the state penitentiary at McAlester; the date of said execution to be fixed for Friday, March 11, 1932, said execution to be by the warden of said penitentiary, for all of which let execution issue."

That at the same time and place the following proceedings were had in such court:

"State of Oklahoma, Creek County—ss.:

"In District Court.

"Be it remembered, that the Honorable district court of Creek county, state of Oklahoma, convened at the hour of seven thirty (7:30) p. m. on the 30th day of December, 1931, the same being one of the regular judicial days of the November, 1931, term of said district court, there being present the Honorable Gaylord R. Wilcox, Judge, Willis C. Strange, sheriff, and Ray H. Weakley, court clerk, Sebe Christian, county attorney, and I. L. Huff, court reporter.

"Thereupon public proclamation being ordered by the court, and announced for the opening of said court, the following proceedings among other things were had and done, to wit:

"State of Oklahoma v. Jess Hollins. No. 3456.

"The prisoner, the above named Jess Hollins, defendant, being personally present in open court, and said defendant having been legally charged by information of the crime of rape by force, and having been arraigned and entered his plea of guilty to said charge, the said defendant was asked by the court whether he had any legal cause to show why judgment and sentence should not be pronounced against him in accordance with the law in such cases made and provided, and in accordance with his plea of guilty; and the said defendant giving no good reason therefor and no good reason appearing to the court;

"It is therefore considered, ordered, adjudged and decreed by the court, that the said defendant Jess Hollins, be by the sheriff of this county transported and delivered within ten (10) days from this date to the warden of the state penitentiary at McAlester in the state of Oklahoma, and that the said defendant be there confined until Friday, March 11, 1932, and on that said date and within the walls of the said State Penitentiary at McAlester in the state of Oklahoma the said warden of the state penitentiary shall cause the said defendant, Jess Hollins, to be put to death by electrocution, as provided by the laws of the state of Oklahoma, and that the said defendant, Jess Hollins, pay the costs of this prosecution taxed at $137.15, for which let execution issue."

That immediately after the entering of such judgment and the adjournment of said court, the sheriff of Creek county transported the petitioner to the penitentiary at McAlester and delivered him into the custody of S. E. Brown, the warden, at 2 o'clock a. m. on the 31st day of December, 1931.

That on the 29th day of January, 1932, Judge Wilcox reported to the pardon and parole attorney in writing, which was offered in evidence on the hearing, the proceedings had at the time of petitioner's arraignment and plea and sentence, and among other things said:

"The fact of the business is, immediately after the commission of the crime two mobs formed to take this prisoner from the sheriff and lynch him, and it was only by the clever conduct of the officers at the time the arrest was made that they were able to evade the mob and land their prisoner in the county jail. After the defendant made his confession there was great apprehension on the part of the officers that a mob would storm the jail and cause great trouble. They were all very anxious to have the defendant sentenced and taken to the penitentiary as soon as possible, in order to avoid any further trouble, and that is one reason why he was sentenced so soon after the commission of the crime.

"After the information had been filed and the defendant had made his voluntary confession, there was no legal reason why the county should not pass sentence and judgment, and there was every reason why it should be done and the defendant removed to the penitentiary for safe keeping."

On the hearing of the application, the state called Judge Wilcox, who testified that petitioner was an ignorant Negro, unable to read or write, and of low mentality; that he remembered the occurrence of mob violence in Tulsa and was afraid if the arraignment and sentence was delayed there might be a serious outbreak in Creek county. When asked by a member of the court why he did not appoint counsel for petitioner, he said that since he had pleaded guilty he saw no reason for the appointment of counsel.

The state also called E. H. Snider, committing magistrate, who testified in substance that when petitioner was arraigned on complaint of the state, he said he had no lawyer and wanted a preliminary examination; that he set this hearing for the 2d day of January, 1932; that on the 30th day of December, 1931, the county attorney informed him that petitioner desired to withdraw his ap-

plication for preliminary hearing and waive the same; that he did not have petitioner brought to his court room in the city; that he went to the county jail and there received petitioner's waiver and made an order binding him to appear in the district court; that his reason for going to the county jail was because of his fear of mob violence.

Two questions confront the court:

First. Does the record and evidence disclose due process of law?

Article 2, sec. 7, of the Oklahoma Constitution provides:

"No person shall be deprived of life, liberty, or property, without due process of law."

This principle is older than written Constitutions. The phrase "due process of law" as used in the Bill of Rights is synonymous with "law of the land" as found in Magna Charta. By the "law of the land" is clearly intended the general law which reads before it condemns, which proceeds upon inquiry and renders judgment only after trial. It means that every citizen shall hold his life, liberty, and property under the protection of the general rules which govern society.

Section 20 of the Bill of Rights (Const. art. 2) provides:

"In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: Provided, that the venue may be changed to some other county of the state, on the application of the accused, in such manner as may be prescribed by law. He shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses. * * * He shall have the right to be heard by himself and counsel; and in capital cases,

at least two days before the case is called for trial, he shall be furnished with a list of witnesses that will be called in chief, to prove the allegations of the indictment or information, together with their postoffice addresses."

This court has held that the right to a jury trial, to change of venue, to have a copy of the information, to be heard by counsel and the service of the list of witnesses upon him in a capital case more than two days before the trial, may be waived. The waiver of any of these constitutional rights or a plea of guilty should be purely voluntary and should be made by one competent to know the consequences thereof, and should not be accepted until after the defendant has been fully advised by the court of his rights and the consequences of his plea. Howington v. State, 30 Okla. Cr. 243, 235 Pac. 931; Mullen v. State, 28 Okla. Cr. 218, 230 Pac. 285; Sutton v. State, 35 Okla. Cr. 263, 250 Pac. 930; Brown v. State, 39 Okla. Cr. 406, 266 Pac. 476.

In the case at bar, it is only necessary to examine the record and read the evidence to know that this ignorant, defenseless Negro, with the terror of the mob in his mind, did not and could not voluntarily do anything, and therefore did not waive any of his constitutional rights. Perhaps he was not coerced by the officers, but doubtless he was coerced by his fear and by the circumstances of his case.

It was the magistrate's duty under section 2484, C. O. S. 1921, to immediately upon arraignment of petitioner inform him of the charge against him and of his right to counsel and of his right to waive examination and, if requested, to send for counsel to represent him. Having fixed a day for the preliminary hearing, the magistrate did not wait for that, but, on the request of the county attorney, went to the county jail and there conducted a

proceeding two days before the time fixed, as he says, because of fear of a mob. The haste in filing the information in the district court, and the convening of the court in a night session to receive the plea, and the haste in rushing the petitioner to the penitentiary in the nighttime, are all unusual and not according to due and orderly process of law.

No more solemn duty can be imposed upon the court than the duty of protecting and the duty of taking human life. When life is to be taken under the judgment of a court, the act cannot be justified, except by the strict observance of the forms of the law of the land. No act which a court can be called upon to perform is more grave and solemn than to pronounce judgment and sentence upon a plea of guilty in a capital case.

In a case of this kind, where petitioner is charged with a capital offense, he should have the advantage of every right which the law secures to him upon his trial. The court should procure counsel for him if he is unable to procure the same, should give ample time to confer with counsel and prepare for the hearing, and should delay sentence at least the statutory time. A fair and impartial administration of justice is one of the most sacred rights of the citizen, and it is the duty of the courts to see that the constitutional rights of the accused shall not be violated; however guilty he may be, he is entitled to a fair trial according to the due and orderly course of the law.

Second. The other question is: Will habeas corpus lie?

The Supreme Court of the United States, in Moore et al. v. Dempsey, 261 U. S. 86, 43 S. Ct. 265, 67 L. Ed. 543, granted a writ of habeas corpus where the facts were very similar to those in the case at bar.

This court has uniformly held that habeas corpus will lie where the judgment is void. Ex parte Justus, 3 Okla. Cr. 111, 104 Pac. 933, 25 L. R. A. (N. S.) 483; Ex parte Rupert, 6 Okla. Cr. 90, 116 Pac. 350; Ex parte Lair, 29 Okla. Cr. 282, 233 Pac. 789; Ex parte Dunn, 33 Okla. Cr. 190, 242 Pac. 574; Ex parte Hollingshead, 24 Okla. Cr. 131, 216 Pac. 486.

The judgment in the case at bar is void for want of due process of law. The writ is accordingly allowed. Respondent, S. E. Brown, warden of the penitentiary, is ordered to surrender petitioner, Jess Hollins, into the custody of the sheriff of Creek county. It is further ordered that petitioner be arraigned in the district court of said county, at a convenient time, and there proceeded against according to law.

DAVENPORT, P. J., and EDWARDS, J., concur.