George Kent **WALLACE**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. C–91–309.

Court of Criminal Appeals of Oklahoma.

March 27, 1995.

Jeffrey C. Smith, Poteau, Trial Counsel, for appellant at trial.

Anne M. Moore, Asst. Appellate Public Defender, Norman, Appellate Counsel, for appellant on appeal.

Mike Sullivan, Dist. Atty., Poteau, Trial Counsel, for appellee at trial.

Susan Brimer Loving, Atty. Gen., Diane Blalock, Asst. Atty. Gen., Oklahoma City, Appellate Counsel, for appellee on appeal.

## OPINION ON MANDATORY SENTENCE REVIEW, ISSUANCE OF MANDATE, AND SETTING OF EXECUTION DATE

LUMPKIN, Judge:

Appellant George Kent Wallace entered a plea of guilty to two charges of Murder in the First Degree (21 O.S.Supp.1982, § 701.7(A) and 21 O.S.Supp.1989, § 701.7(A) in LeFlore County Cases No. CRF–91–1 and CRF–91–2. The Hon. Ted A. Knight, Associate District Judge, ordered he be sentenced to death by lethal injection on each count.

This case is somewhat unique, in that Appellant presented no defense during his sentencing hearing; and in fact requested the death penalty. In *Grasso v. State*, 857 P.2d 802 (Okl.Cr.1993), we addressed the situation which arises when a defendant does not wish to pursue his direct appeal. Here, we are presented with a problem peripherally addressed in *Grasso:* whether a criminal defendant can waive the presentation of mitigating evidence without running afoul of the ban against arbitrary and unreliable application of the death penalty implicit in the Eighth Amendment to the United States Constitution. *See Id.,* 857 P.2d at 814 n. 5 (Chapel, J., Specially Concurring). We hold he can.

### I.

Appellant's conviction in the murders of two teen-age boys, William Von Eric Domer (CRF–91–1) and Mark Anthony McLaughlin (CRF–91–2) culminates a decades-long string of brutal, sadistic assaults.

In providing a factual basis for the Domer murder, Appellant told the court: "Basically, I picked the boy up, took him out to a secluded area, beat him, and then shot him." He accomplished this on February 17, 1987, by posing as a police officer, picking up the 15–year–old Domer in Arkansas, handcuffing and shackling him, and transporting him across the state line to Leard Pond near Pocola in LeFlore County, Oklahoma. There, he pulled down the boy's pants and underwear and began beating him with a paddle. When Domer resisted, he pulled up the boy's pants, got him out of the car, walked him to a nearby cemetery, and shot him twice in the back with a .25 caliber semiautomatic pistol. He then put the body in the pond.

The Mark Anthony McLaughlin murder occurred November 11, 1990 (Appellant had been in prison for a non-related offense in the interim). Appellant told the court: "Impersonating an officer, I picked him up in Van Buren [Arkansas], shackled him, took him out to Leard Pond, beat him, shot him, and then put him in the pond." As with Domer, Appellant first pulled down McLaughlin's pants and underwear and beat him, this time with a handle of a plunger used to unstop clogged drains and toilets. After the beating, he pulled up the 14–year-old boy's pants, got him out of the car and shot him once in the back with a .22 caliber pistol as they walked toward the pond. He would have shot him again, but the gun jammed. In each case, he had rented a car and had gone out specifically looking for someone to beat. He told investigators after his arrest that if he had not been caught, he would have killed again.

Appellant was apprehended by Arkansas authorities on December 9, 1990. Earlier that evening, Appellant had again posed as a police officer and had "arrested" Ross Allen Ferguson, who had recently graduated from high school. He transported the handcuffed and shackled Ferguson to an isolated place, pulled down his pants and underwear, and beat him with the same plunger handle he had used on McLaughlin. After the beating, he got Ferguson out of the car and began walking him down the road. Ferguson was

aware of the McLaughlin murder, and asked Appellant if he were going to shoot him now. Appellant smiled and said he would not shoot Ferguson; he then stabbed him. Ferguson pretended to be dead and allowed himself to be dragged to a nearby pond, where Appellant removed the handcuffs and shackles. Ferguson then was able to surprise Appellant, run up to the car, drive it away and notify authorities. Appellant was arrested near the scene some 45 minutes later.

Appellant was returned to Oklahoma in late January 1991. He ignored his court-appointed attorney's advice and told authorities details of each murder. He also told them he wanted to receive the death penalty, preferring it to a lifetime in prison. The magistrate ordered Appellant evaluated to determine competency. After a hearing at which he was determined competent, Appellant waived preliminary hearing on February 13, 1991. Despite the earlier determination of competency and against the protests of both the prosecutor and Appellant's attorney, the trial court again ordered a "full psychological evaluation at Eastern State Hospital upon an application to determine competency," appointing an amicus curiae to represent Appellant during the competency proceedings. Appellant was again declared competent. The next day, on March 12, 1991, Appellant pled guilty to both murders. The court ordered a pre-sentence investigation.

At a sentencing hearing on April 4, 1991, the court found three aggravating circumstances: Appellant had previously been convicted of a violent felony (21 O.S. § 701.12(1)); the murders were especially heinous, atrocious or cruel (21 O.S. § 701.12(4)); and Appellant posed a continuing threat to society (21 O.S. § 701.12(7)). Formal sentencing was delayed for the preparation of a presentence investigation until April 12, 1991, at which time Appellant was sentenced to die by lethal injection.

■ Appellant made it clear he did not want to appeal his convictions; indeed, he signed a waiver to that effect the day of formal sentencing.[1] The trial court on May 7, 1991, appointed the Oklahoma Indigent Defense System to represent him on appeal. This Court on July 9, 1991, remanded for an evidentiary hearing to determine Appellant's representation and to determine whether Appellant had in fact waived all appeals but his mandatory sentence review. The trial court filed its Findings and Conclusions with this Court on July 29, 1991, observing Appellant "has stated he wishes to waive all appeals other than the mandatory review of his sentence. He has not retracted those statements and this is his position even as of today." Despite that declaration, the trial court found there were issues which should be raised; and decided "he should be allowed a direct appeal of all issues in this matter."[2] This Court granted an appeal out of time on August 29, 1991.[3] However, Appellant did

---

**1.** The signed affidavit acknowledges he had pled guilty to and been convicted of two murders and sentenced to death in each one; that he was represented at all stages during the cases by an attorney; that the attorney had advised Appellant of "all my legal and constitutional rights at all phases and I have acted freely, knowingly and voluntarily at all phases and at all times"; that he had instructed his trial attorney not to pursue a direct appeal of his sentences, adding "I hereby waive my right to appeal freely and voluntarily with the full and complete understanding that this decision will hasten my execution. It is my desire that I be executed at the earliest possible date allowed by law"; and that he "strictly and expressly forbid[s] any person, persons or entities other than [trial counsel] to represent me and my interests in these cases. It is my desire that [trial counsel] alone direct the remnants of my defense." (CRF–91–1 O.R. 92–93); (CRF–91–2 O.R. 92–93).

**2.** At the outset, we compliment the Hon. Ted A. Knight, trial judge, for the excellent job of preserving this record for appeal. The court went out of his way to ensure the record before this Court was thorough, as well as taking great pains to ensure that all of Petitioner's rights were protected. We also compliment the court for his prophetic ruling two years before *Grasso* that Petitioner's "appeal," in the form of a mandatory sentence review, could not be waived, and must be conducted by this Court.

**3.** The case was not at issue in this Court for nearly three (3) years after that Order. Appellant filed several applications for extensions of time in which to file the brief-in-chief. Those applications were granted before this Court began casting a wary eye toward numerous extensions. Appellant's attorney, as chief of the Capital Direct Appeals Division of the Oklahoma Indigent Defense System, then filed an Application for Order Setting Briefing Schedule with this Court

not file an application to withdraw his plea of guilty, which is a jurisdictional requirement for a certiorari appeal from a plea of guilty. *See* 22 O.S.1991, Ch. 18, App. *Rules of the Court of Criminal Appeals,* Rule 4.1. Therefore, the case is only before this Court for mandatory sentence review. *See* 21 O.S. 1991, § 701.13.

At no time did Appellant present, or allow his attorney to present, any mitigating evidence on his behalf. That is the subject of the first proposition.

### II.

### A.

■ Appellant's attorney argues the Eighth Amendment to the United States Constitution requires the sentencer to consider mitigating evidence to reach a rational and individualized determination of the appropriate sentence; and because Appellant refused to present such evidence, the death sentence was imposed in an arbitrary and unreliable manner.

It is beyond question mitigating evidence is critical to the sentencer in a capital case. *See Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Lockett*

*v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). However, none of the United States Supreme Court cases cited by Appellant deal with the situation which occurs when a defendant willingly and knowingly refuses to place any mitigating evidence before the sentencer.

■ Appellant does not contest a defendant may waive his right to present mitigating evidence. We agree. *See Singleton v. Lockhart,* 962 F.2d 1315, 1322 (8th Cir.1992) (In dealing with the issue of incompetent counsel, the court stated: "If a defendant may be found competent to waive the right of appellate review of a death sentence, we see no reason why a defendant may not also be found competent to waive the right to present mitigating evidence that might forestall the imposition of such a sentence in the first instance."); *Silagy v. Peters,* 905 F.2d 986, 1008 (7th Cir.1990) (Discussing a defendant's right to proceed *pro se,* the court observed: "The implication of the [Supreme] Court's decision in *Blystone* [*v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990) ], then, is that one can choose to forego the presentation of mitigation evidence even over the contrary advice of counsel and warnings of the court."); *Clark v. State,* 613 So.2d 412, 413 (Fla.1992).[4] However, Appel-

requesting a final briefing schedule be set in ten (10) capital cases to allow timely filing in each case. Such an order was issued on May 17, 1993. In that order, Appellant's brief-in-chief was to be filed with the Clerk of this Court no later than April 15, 1994. Appellant's brief was filed on that date. The State's brief-in-chief was filed June 14, 1994.

**4.** Of course, the Supreme Court has not required a defendant to present mitigating evidence. Rather, a survey of relevant cases reveals statements concerning the ability of a defendant to present such evidence are phrased permissively. *See e.g., Blystone v. Pennsylvania,* 494 U.S. 299, 307 n. 5, 110 S.Ct. 1078, 1083 n. 5, 108 L.Ed.2d 255 (1990) (".... The dissent ignores the fact that the three-Justice opinion in Jurek concluded the Texas statute fulfilled the requirement of individualized sentencing precisely because one of the special findings had been construed by Texas courts to permit the consideration of mitigating evidence."); *McCleskey v. Kemp,* 481 U.S. 279, 305–06, 107 S.Ct. 1756, 1774–75, 95 L.Ed.2d 262 (1987) ("States cannot limit the sentencer's consideration of any relevant circumstance that could cause it to decline to impose the penalty. In this respect, the State cannot channel the

sentencer's discretion, but must allow it to consider any relevant information offered by the defendant."); *Skipper v. South Carolina,* 476 U.S. 1, 8, 106 S.Ct. 1669, 1672–73, 90 L.Ed.2d 1 (1986) ("The resulting death sentence cannot stand, although the State is of course not precluded from again seeking to impose the death sentence, provided that it does so through a new sentencing hearing at which petitioner is permitted to present any and all relevant mitigating evidence that is available."); *Eddings v. Oklahoma,* 455 U.S. 104, 113–14, 102 S.Ct. 869, 876–77, 71 L.Ed.2d 1 (1982) ("Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider, as a matter of law, any relevant mitigating evidence."); *Id.,* 455 U.S. at 115 n. 10, 102 S.Ct. at 877 n. 10 ("We note that the Oklahoma death penalty statute permits the defendant to present evidence 'as to any mitigating circumstances.' Okla.Stat., Tit. 21, Sec. 701.10 (1980). Lockett requires the sentencer to listen."); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978) ("... we conclude that the Eighth and Fourteenth Amendments require that the sentencer, in all but the rarest kind of capital case, not be precluded from considering, as a mitigat-

lant's attorney argues that to ensure a sentence is imposed in a constitutionally reliable manner, the State must ensure mitigating evidence is presented even if it is against the wishes of the defendant.

The argument is not without authority. *See State v. Koedatich,* 112 N.J. 225, 548 A.2d 939 (1988), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 813, 102 L.Ed.2d 803 (1989); *Morrison v. State,* 258 Ga. 683, 373 S.E.2d 506 (1988), *cert. denied,* 490 U.S. 1012, 109 S.Ct. 1658, 104 L.Ed.2d 172 (1989). However, there are countervailing arguments that persuade us no constitutional violation occurs if no mitigating evidence is presented in a defendant's behalf.

■ Initially, a rule requiring the presentation of mitigating evidence would not be enforceable. Even if the court could force an attorney to attempt to present mitigating evidence, it cannot force an unwilling defendant to provide that evidence to his attorney. *See Gray v. Lucas,* 677 F.2d 1086, 1094 (5th Cir.1982), *cert. denied,* 461 U.S. 910, 103 S.Ct. 1886, 76 L.Ed.2d 815 (1983) (Noting petitioner steadfastly maintained that he did not want anyone to testify on his behalf and refused to identify any witnesses; court said the refusal did not negate the attorney's duty to investigate, but added "the scope of that duty was limited by Gray's refusal"); *see also Hamblen v. State,* 527 So.2d 800, 804 (Fla. 1988) ("there is no power that could have compelled [a defendant] to cooperate and divulge such information."). This holding is consistent with past holdings of this Court. *See e.g., Brown v. State,* 871 P.2d 56, 76 (Okl.Cr.1994) (In discussing an appellant's allegation trial counsel was ineffective when an appellant failed to inform him of possible mitigating evidence, we said "[t]rial counsel cannot be ineffective for failing to raise claims as to which his client has neglected to supply the essential underlying facts when those facts are within the client's possession; clairvoyance is not required of effective trial counsel." (quoting *Dooley v. Petsock,* 816 F.2d 885, 890–91 (3d Cir.1987)).

Additionally, to reverse a sentence because a defendant presented no mitigating evidence

could be counterproductive. As the California Supreme court has observed:

A knowledgeable defendant desiring to avoid the death penalty could [proceed *pro se*] and then decline to present any mitigating evidence at the penalty phase, secure in the knowledge that any death judgment would be reversed by this court, while a defendant genuinely desiring death could circumvent the rule by presenting a bare minimum of mitigating evidence. A rule so easily evaded or misused is clearly unsound. The sanction of appellate reversal is not the answer, nor has any alternative method been suggested to compel an unwilling defendant to present an effective penalty defense.

While the United States Supreme Court has frequently stated that the Eighth Amendment and evolving standards of societal decency impose a high requirement of reliability on the determination that death is the appropriate penalty in a particular case [citations], the high court has never suggested that this heightened requirement for reliability requires or justifies forcing an unwilling defendant to accept representation or to present an affirmative penalty defense in a capital case. .... Rather, the required reliability is attained when the prosecution has discharged its burden of proof at the guilt and penalty phases pursuant to the rules of evidence and within the guidelines of a constitutional death penalty statute, the death verdict has been returned under proper instructions and procedures, and the trier of penalty has duly considered the relevant mitigating evidence, if any, which the defendant has chosen to present. A judgment of death entered in conformity with these rigorous standards does not violate the Eighth Amendment reliability requirements.

*People v. Bloom,* 48 Cal.3d 1194, 774 P.2d 698, 718–19, 259 Cal.Rptr. 669, 688–90 (1989). *See also People v. Sanders,* 51 Cal.3d 471, 797 P.2d 561, 594, 273 Cal.Rptr. 537 (1990); *People v. Lang,* 49 Cal.3d 991, 782 P.2d 627,

ing factor, any aspect of a defendant's character or record and any of the circumstances of the

offense that the defendant proffers as a basis for a sentence less than death.")

652–53, 264 Cal.Rptr. 386 (1989). The same philosophy was enunciated in *Hamblen,* where the Florida Supreme Court observed:

> Society's interest in the proper administration of justice is preserved by giving a defendant the right freely to present evidence in mitigation, by requiring the sentencing body to find aggravating factors before imposing the death penalty, and by requiring that a sentence of death be reviewed by this court. These practices are to assure that the death penalty will not be imposed arbitrarily.

*Hamblen,* 527 So.2d at 804 (quoting *People v. Silagy,* 101 Ill.2d 147, 181, 77 Ill.Dec. 792, 461 N.E.2d 415, 431–32 (1984), *cert. denied,* 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984)).

■ We therefore hold Appellant's decision not to present mitigating evidence did not deprive the State of its interests in seeing that his sentence was imposed in a constitutionally acceptable manner. The prosecution was required to present evidence of aggravating circumstances, which the court was required to find beyond a reasonable doubt before it could impose the death sentence; the court was required to afford Appellant the opportunity to present mitigating evidence, which it did; and this Court is required to review the evidence in this case to determine if the sentence was imposed in an arbitrary or unreliable manner.

### B.

■ Appellant points to *Koon v. Dugger,* 619 So.2d 246 (Fla.1993), where the Florida Supreme Court established a prospective rule dealing with refusal to present mitigating evidence.[5] We decline to adopt such a rule, as we foresee problems which would inevitably occur were we to force trial counsel to produce mitigating evidence when he receives absolutely no information from his client which he could use as a starting point to gather mitigating evidence.[6]

■ Nonetheless, we find merit in establishing guidelines to assist trial courts in dealing with a situation such as the one presented here. These guidelines must be used both in guilty/nolo contendere pleas and in a trial when a defendant refuses to allow the presentation of mitigating evidence in the sentencing stage.

Pursuant to *Grasso,* the court must fully determine a defendant is competent to waive the right to an appeal. There, we said:

> [A] defendant sentenced to death will be able to forego a state appeal only if he has been judicially determined to have the capacity to understand the choice between life and death and to knowingly and intelligently waive any and all rights to appeal his sentence.

*Id.,* 857 P.2d at 806 (quoting *Franz v. State,* 296 Ark. 181, 754 S.W.2d 839, 843 (1988)). This is the basic standard we use here. Toward that end, the court must ensure the defendant has an understanding of his or her rights both in the plea process and in the sentencing process:

(1) The court must inform the defendant of the right to present mitigating evidence, and what mitigating evidence is.

(2) The court must inquire both of the defendant and his attorney (if not *pro se*) whether he or she understands these rights.

---

**5.** Under this procedure, when a capital defendant, against counsel's advice, refuses to present or permit the presentation of mitigating evidence in the penalty phase, defense counsel must inform the trial court on the record of that decision. Counsel must also indicate based on his investigation whether he reasonably believes mitigating evidence exists, what it is, and whether it could be presented. The trial court should then require the defendant to confirm on the record his counsel has discussed these issues with him and state that despite his counsel's wishes, the defendant desires to waive presentation of penalty phase evidence. *Id.* at 250.

**6.** Indeed, the case *sub judice* illustrates what could happen in a more extreme example. Appellant had no ties to Oklahoma; he had no relatives even in Arkansas where he was living. Despite this, his counsel in oral argument commented he did cooperate with her to the extent he gave some background concerning family and other information. Had he chosen to, he could have completely "stonewalled," refusing to give any information whatsoever. Had he done so, trial counsel would almost literally have no starting point from which to gather any information whatsoever. Counsel cannot advise a court of information he cannot gather.

(3) The court should also inquire of the attorney if he or she has attempted to determine from the defendant whether there exists any evidence which could be used to mitigate the aggravating circumstances proven beyond a reasonable doubt by the prosecution.

(4) If such information has been given, the attorney must advise the court what that mitigating evidence is; if the defendant has refused to cooperate, the attorney must relate that to the court.

(5) The trial court must inquire of a defendant and make a determination on the record whether the defendant understands the importance of mitigating evidence in a capital sentencing scheme, understands such evidence could be used to offset the aggravating circumstances proven by the prosecution in support of the death penalty, and the effect of failing to present that evidence.

(6) After being assured the defendant understands these concepts, the court must inquire of the defendant whether he or she desires to waive the right to present such mitigating evidence.

(7) Finally, the court should make findings of fact pursuant to *Grasso* of the defendant's understanding and waiver of rights.

By using these guidelines, trial courts can provide valuable information and help preserve the record for the mandatory sentence review.

## C.

■ Appellant's attorney also argues the absence of mitigating evidence deprives this Court of its ability to perform its mandatory sentence review. We disagree. Section 701.13 of Title 21 reads in pertinent part:

A. Whenever the death penalty is imposed, and upon the judgment becoming final in the trial court, the sentence shall be reviewed on the record by the Oklahoma Court of Criminal Appeals. ....

....

C. With regard to the sentence, the court shall determine:

1. Whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; and

2. Whether the evidence supports the jury's or judge's finding of a statutory aggravating circumstance as enumerated in Section 701.12 of this title.

With this directive in mind, we shall examine the remainder of the testimony, the court-ordered presentence investigation and other evidence presented at Appellant's sentencing hearings.

■ Appellant's record shows he has been involved in violent behavior since 1966. His prior convictions consist of six (6) convictions for kidnapping; four (4) convictions for assault and battery on a minor with a deadly weapon; one (1) conviction for attempted murder; and two (2) convictions for felonious possession of a firearm. This evidence more than supports the trial court's finding Appellant has been convicted previously of a violent felony (21 O.S. § 701.12(1)) in both CRF-91-1 and CRF-91-2.

■ As noted above, Appellant told investigating authorities he would have continued his sadistic practices in the future had he not been apprehended. This was re-enforced by Appellant's own statement at the hearing, when he told the court "It is also accurate to say that had I not been caught, I would be doing the same thing today." Appellant also told authorities he intended to use a butane fireplace lighter found in his glove compartment to torture future victims.

Additionally, the prosecution presented evidence from Robert Hill, a North Carolina resident. Hill testified that in 1976, when he was 15 years old, Appellant offered him a ride. As they reached Hill's destination and Hill attempted to get out of the car, Appellant locked Hill's door, grabbed him and shoved him head first into the floorboard, telling Hill to put his hands behind his back. When the boy refused, Appellant hit him at least six times with a claw hammer. Despite these repeated blows, Hill managed to stumble from the car and begin to run away. Appellant backed his car up in an attempt to pursue Hill, then sped off as Hill reached a place of safety. This evidence also amply supports the trial court's finding Appellant

would likely commit future acts of violence which would constitute a continuing threat to society (21 O.S. § 701.12(7)) in both CRF–91–1 and CRF–91–2.

The trial court also found in each case the murder was especially heinous, atrocious or cruel (21 O.S. § 701.12(4)). This requires a more thoughtful look at the evidence. The medical examiner testified that both Domer and McLaughlin were likely killed instantly by the gunshots; then after they were dead were dragged to the pond and put in the water. Therefore, for this aggravating circumstance to stand, there must be evidence of torture or serious physical abuse before that point.

In McLaughlin's case, there is little doubt torture and serious physical abuse occurred before he was shot. The medical examiner reported McLaughlin's wrists and ankles bore contusions and abrasions from the handcuffs and leg irons Appellant had bound him with. In addition, there was considerable hemorrhaging on the boy's buttocks, indicating hard blows made by a rod-shaped instrument. The medical examiner noted the presence of least four or five such injuries, and Appellant told authorities the boy "received quite a few licks." This evidence of Appellant's sadistic behavior towards McLaughlin supports the trial court's finding in CRF–91–2 that torture or serious physical abuse occurred before death.

The evidence concerning Domer is less plentiful. Appellant told authorities the boy was "calm" when they arrived at the pond. Furthermore, although Appellant began to beat the boy, he resisted the beating by turning to a position where Appellant could not paddle him. Appellant himself confirmed this, saying "he didn't let me whip him long enough to cry," adding later "he was obviously determined not to take—uh—a beating." Appellant also told authorities the boy did not know he had a pistol; Appellant had not displayed it before shooting Domer in the back. He also told authorities the boy was "dead when he hit the ground." Based on this, we find insufficient evidence to support the trial court's findings in CRF–91–1 that the murder of Domer was especially heinous, atrocious or cruel.

Despite Appellant's refusal to present mitigating evidence, the trial court ordered a pre-sentence investigation, which was included in the record. An examination of that record reveals discussions of versions of the murders, criminal record, personal and family data, his residences, education background, employment history, health, military history, financial condition and future plans. It shows nothing by way of mitigation. The prosecutor made a statement to the court at the conclusion of the sentencing hearing during which he said:

> In these two cases here today, I've looked at the facts, the circumstances, and all the evidence that surrounds those two murders. I've studied this defendant, his background, his remarks, the reports that we have on him, competency and otherwise. And without hesitation, I can tell this Court that I find no mitigating circumstances whatsoever in either murder.

(4–4 Tr. 111). In response, Appellant's attorney told the court he "cannot take issue with anything [the prosecutor] has said," adding "The defendant is bound to show mitigation in order for the Court to consider some other form of punishment, and we have shown none." (4–4 Tr. 115–16).

From this information, we conclude there was no real mitigating evidence to be presented to the trial court. In light of this lack of mitigation, and examining the record as we are required to do by 21 O.S.1991, § 701.13(C), we find in CRF–91–2 all three aggravating circumstances are supported by the record, and the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

In CRF–91–1, even though we have found insufficient evidence to support the finding the murder was especially heinous, atrocious or cruel, upon reweighing the remaining evidence we find the remaining two aggravating circumstances support the court's judgment of death; and find the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor.

### D.

As another subproposition, Appellant's attorney contends the trial court failed

to consider and weigh the mitigating evidence presented to the court. This assertion is not supported by the record. Even though the court took a relatively short time to make a decision after all the evidence was presented,[7] it also delayed formal sentencing for over a week. At that time he observed he had ordered a presentence investigation,[8] adding:

> The Statutes do not require a presentence investigation in a capital case; but the Court ordered the presentence in an effort to receive other information about this defendant that was not presented in the case. And that has to do with his background history, his growing up, and things such as that that the Court feels is important to

consider in entering a sentence in this type of case.

(4–12 Tr. 03–04). This indicates the court carefully studied the information available to him at the time he sentenced Appellant to death.[9]

■ Accordingly, Appellant's first proposition is without merit.[10]

## III.

■ For his second proposition, Appellant's attorney contends the trial court violated the Eighth Amendment by using the same evidence to find the aggravating circum-

---

7. The record indicates the trial court recessed for approximately 25 minutes before returning with its findings.

8. Appellant's attorney asserts the trial court did not consider this presentence investigation in determining punishment. This statement is simply not supported by the record. The presentence investigation was ordered on March 12, 1991, at the conclusion of the hearing at which Appellant pled guilty; the report was dated April 1; the sentencing hearing at which evidence was produced was held April 4; formal sentencing was held April 12. Therefore, there was plenty of time for the court to review the report. That the court did so is clearly indicated in the transcript of formal sentencing. Nor are we persuaded that the few omissions in the report would have influenced the court. While the court did not have a criminal record from the Federal Bureau of Investigation, the report clearly showed he had such a record; therefore, at most the record would have shown Appellant had more criminal convictions than the record before the court revealed. This could hardly be described as helpful. Nor do we think the court would have been swayed by official notification from learning institutions that Appellant had completed truck driving school or high school. By the same token, statements from past employers to verify that Appellant held jobs for brief periods of time would not have swayed any sentencer. Finally, official verification Appellant entered the Navy in 1959 and was kicked out in 1962 with a reduction in rank after spending time in the brig for convictions of assault and carrying a concealed deadly weapon would have done nothing in the way of mitigation for consideration by the trial court.

9. Appellant's attorney also notes in passing he had requested the death penalty. We mention this point only to show this desire had no bearing on the court's determination of punishment. In the trial judge's report required by 21 O.S.1991,

§ 701.13(A), the judge made the following comment:

> The trial court observes this to be a very unusual situation where accused confesses to the crimes and desires the death penalty. However, when the evidence was presented and considered, it is very clear that this defendant should receive the death sentence. This conclusion is reached without any consideration to this defendant's desire for death. The evidence presented at the sentencing hearing sufficiently established three statutory aggravating circumstances. The evidence in favor of the death sentence, in the trial judge's opinion, was overwhelming.

This further supports the determination Appellant's sentence was not imposed under the influence of passion, prejudice or other arbitrary factor.

10. As another subproposition, Appellant's attorney argued there was mitigating evidence which could have been presented at trial. In support of this, she filed with this Court a motion to supplement the record with an affidavit from Petitioner's aunt, who could have testified from personal knowledge about Petitioner's background and family history; and an affidavit of a Tulsa psychologist, who would express personal opinions about Petitioner's early childhood, his psychosocial and pathology development and his potential for future dangerousness. This Court denied that motion. Petitioner's attorney has missed the point. She has not argued whether a criminal defendant can waive his right to present mitigating evidence. Rather, she argued the court was constitutionally required to hear mitigating evidence, whether the defendant wished it or not. In light of our holding above there is no constitutional requirement compelling the introduction of mitigating evidence, the attorney's attempt to do so on appeal would be to contravene Petitioner's expressed wishes no such evidence be presented, which she virtually concedes on appeal he has a right to do.

stances of prior violent felony and continuing threat.

We first reject the argument the evidence to prove each was exactly the same. The prior felonies were used in support of the continuing threat; but so also was Appellant's own statements to both authorities and the trial court he would have continued his sadistic practices in the future had he not been apprehended. He not only would have continued them, he would have expanded his methods of torture: he told authorities he intended to use a butane fireplace lighter found in his glove compartment to torture future victims.

In any case, we have rejected this argument before. *Berget v. State,* 824 P.2d 364, 376–77 (Okl.Cr.1991), *cert. denied,* —— U.S. ——, 113 S.Ct. 124, 121 L.Ed.2d 79 (1992); *Pickens v. State,* 850 P.2d 328, 337 (Okl.Cr. 1993); *Smith v. State,* 819 P.2d 270, 278 (Okl.Cr.1991), *cert. denied,* 504 U.S. 959, 112 S.Ct. 2312, 119 L.Ed.2d 232 (1992). We do so again. This proposition is without merit.

### IV.

#### A.

■ Appellant's attorney argues in the third proposition the orders finding Appellant competent to stand trial, to plead guilty and waive rights are erroneous. The contention is the trial court was not required to determine if Appellant had a rational and factual understanding of the proceedings against him. Appellant's attorney also argues the presumptions and burden of proof in Oklahoma's competency statutes are unconstitutional. The right to appeal this issue has been waived by failure to appeal the verdicts on competency in a timely manner after the court's verdict.

We find the arguments to be without merit. The record is saturated with documents showing Appellant both understood the nature of the charges against him and was able to assist his attorney in his defense. During the first competency hearing, evidence showed Appellant completed a form containing approximately five pages of questions asking him to describe court proceedings; who his attorney was; the nature of the

discussions he would have with an attorney in a legal situation; and the nature and role of the judge. Authorities who had conversations with Appellant found him to be rational and able to understand the nature of the proceedings against him.

In preparation for the second hearing, Appellant was examined by a psychologist and a medical doctor and another psychologist who performed testing on Appellant. Dr. Jeanne Russell, a psychologist, testified Appellant completely understood the nature of the charges against him. He was not delusional and did not have hallucinations. Appellant also told authorities he had been examined seven or eight times to determine competency in other states during the course of other criminal proceedings; he was always found competent.

Appellant's case presents a unique situation. Here, there was never any real question of his competency; rather, the court took extra precautions to ensure that the guilty plea Appellant had announced he was going to enter could withstand the intense scrutiny that accompanies all capital cases. Under whatever standard by which this Court would choose to evaluate him, the evidence—in both competency hearings, during his guilty plea and sentencing—showed unequivocally Appellant was competent, as he had a rational understanding of the nature of the charges against him and was able to consult with his attorney with a reasonable degree of rational understanding. *See Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

#### B.

■ Appellant's attorney also claims the statute is unconstitutional, as it shoulders a criminal defendant with the burden of proof; and requires him to prove incompetency by clear and convincing evidence. Appellant's counsel conceded in oral argument the issue of the competency statute is technically not a part of the mandatory sentence review. However, we note its inclusion here pursuant to the discussion in *Grasso* concerning a defendant's competency to waive an appeal, and consider it in that context.

This Court decided in *Cooper v. State*, 889 P.2d 293 (Okl.Cr.1995) the provisions of 22 O.S.1991 §§ 1175.1 through 1175.8 are constitutional and the allocation of a clear and convincing burden of proof to a criminal defendant "is not subject to proscription under the Due Process clause, because it does not 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.' *Medina [v. California* ], 505 U.S. [——] at ——, 112 S.Ct. [2572] at 2577, 120 L.Ed.2d [353] at 363 [ (1992) ] (quoting *Patterson [v. New York]*, 432 U.S. [197] at 202, [97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) ] )." We find the Appellant was afforded the process due him in these proceedings, and therefore reject this third proposition of error.

## V.

■ The fourth and last proposition of error presented deals once again with attacks on the constitutionality of the "continuing threat" and "heinous, atrocious or cruel" aggravating circumstances. The argument here, as before, is the terms are unconstitutionally vague.

Appellant's attorney concedes this Court has repeatedly rejected the argument the "continuing threat" aggravator is unconstitutionally vague, citing *Boyd v. State*, 839 P.2d 1363, 1371 (Okl.Cr.1992) and *Munson v. State*, 758 P.2d 324, 335 (Okl.Cr.1988), *cert. denied*, 488 U.S. 1019, 109 S.Ct. 820, 102 L.Ed.2d 809 (1989). Likewise, counsel cites *Nuckols v. State*, 805 P.2d 672, 674 (Okl.Cr. 1991) to show us we have previously rejected the argument the "heinous, atrocious or cruel" aggravator is unconstitutionally vague. We agree with those assessments, and see no need to revisit either argument.

This proposition is also without merit.

Accordingly, the Judgments and Sentences of the District Court are AFFIRMED.

The trial court noted in its July 29, 1991, Findings and Conclusions that Appellant "has stated he wishes to waive all appeals other than the mandatory review of his sentence. He has not retracted those statements and this is his position even as of today." This finding is supported by the record. The mandatory sentence review is now completed. IT IS THEREFORE THE ORDER OF THIS COURT that the mandate be issued immediately. Further, it is the order of this Court that the execution of the judgment and sentence of death of the District Court of LeFlore County be carried out on MAY 26, 1995. 22 O.S.Supp.1992, § 1001.1(A).

JOHNSON, P.J., and LANE, J., concur.

CHAPEL, V.P.J., specially concurs.

STRUBHAR, J., concurs in results.

CHAPEL, Vice Presiding Judge, specially concurring:

I believe a competent defendant in a capital case can waive his right to direct appeal.[1] However, I cannot agree with the majority's reliance on *Cooper v. State*[2] and the discussion regarding due process which is contained in dicta in the *Cooper* opinion. In *Cooper* I concurred in result without writing because of the analysis of the Due Process Clause. I now find *Cooper* cited here for that purpose, and I must write to state my disagreement with the analysis in *Cooper*.

This issue is not before us; this Court need not attempt to precisely delineate the boundaries of due process in order to determine the validity of our competency statutes. Nevertheless, the majority correctly notes the difficulty in defining "due process" precisely but provides an unnecessarily narrow view of the principle.

The United States Supreme Court has said:

Under our constitutional system, courts stand against any winds that blow as havens of refuge for those who might otherwise suffer because they are helpless, weak, outnumbered, or because they are non-conforming victims of prejudice and

1. A defendant cannot waive his mandatory sentence review, which remains a statutory obligation of this Court. *Grasso v. State*, 857 P.2d 802 (Okl.Cr.1993).

2. 889 P.2d 293, 66 O.B.J. 166, 170 (Okl.Cr.1995).

public excitement. Due process of law, preserved for all by our Constitution, commands that no such practice as that disclosed by this record shall send any accused to his death. No higher duty, no more solemn responsibility, rests upon this Court, than that of translating into living law and maintaining this constitutional shield deliberately planned and inscribed for the benefit of every human being subject to our Constitutional—of whatever race, creed or persuasion."[3]

It is in this context that the Supreme Court declared that the Due Process Clause of the Fourteenth Amendment was "intended to guarantee procedural standards adequate and appropriate, then and thereafter, to protect, at all times, people charged with or suspected of crime by those holding positions of power and authority."[4] Due process is "a summarized constitutional guarantee of respect for those personal immunities which ... are so rooted in the traditions and conscience of our people as to be ranked as fundamental, or are implicit in the concept of ordered liberty." [citations omitted][5]

The Supreme Court has "very narrowly" defined the "category of infractions that violate fundamental fairness" and thus violate due process.[6] However, within those parameters, the Court's scope of review must "ascertain whether [proceedings] offend those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses."[7] "The Due Process Clause places upon this Court the duty of exercising a judgment, within the narrow confines of judicial power in reviewing State convictions, upon interests of society pushing in opposite directions."[8]

This Court has referred to due process as "that fundamental fairness essential to every concept of justice."[9] "A fair and impartial administration of justice is one of the most sacred rights of the citizen, and it is the duty of the courts to see that the constitutional rights of the accused shall not be violated; however guilty he may be, he is entitled to a fair trial according to the due and orderly course of law."[10]

In various contexts, due process has been held to require: 1) that invasive or brutal procedures cannot extract evidence from a prisoner to support his conviction;[11] 2) in the context of involuntary confessions, that a confession may not be coerced but must be the unconstrained product of free choice;[12] 3) that, upon arrest, a person must be brought before a magistrate within a reasonable time;[13] 4) that a statute be explicit enough to inform those subject to it what conduct will render them liable to its penalties, and couched in terms not so vague that persons of common intelligence must necessarily guess at its meaning and differ as to

3. *Chambers v. Florida,* 309 U.S. 227, 241, 60 S.Ct. 472, 479, 84 L.Ed. 716 (1940).

4. *Chambers,* 309 U.S. at 236, 60 S.Ct. at 476–77.

5. *Rochin v. California,* 342 U.S. 165, 169, 72 S.Ct. 205, 208, 96 L.Ed. 183 (1952); *Snyder v. Massachusetts,* 291 U.S. 97, 105, 54 S.Ct. 330, 332, 78 L.Ed. 674 (1934); *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).

6. *Medina v. California,* 505 U.S. ——, ——, 112 S.Ct. 2572, 2576, 120 L.Ed.2d 353 (1992); *Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990).

7. *Rochin,* 342 U.S. at 169, 72 S.Ct. at 208.

8. *Id.,* 342 U.S. at 171, 72 S.Ct. at 209.

9. *Mann v. State,* 856 P.2d 992, 995 (Okl.Cr.1993), cert. denied, 488 U.S. 877, 109 S.Ct. 193, 102 L.Ed.2d 163 (1988); *In re Pate's Petition,* 371 P.2d 500, 505 (Okl.Cr.1962), cert denied, 373 U.S. 915, 83 S.Ct. 1304, 10 L.Ed.2d 415 (1963); *Lisenba v. California,* 314 U.S. 219, 236, 62 S.Ct. 280, 86 L.Ed. 166 (1941).

10. *Ex parte Hollins,* 54 Okl.Cr. 70, 14 P.2d 243, 246 (1932).

11. *Rochin,* 342 U.S. at 173, 72 S.Ct. at 210.

12. See, e.g., *Culombe v. Connecticut,* 367 U.S. 568, 581–84, 81 S.Ct. 1860, 1867–69, 6 L.Ed.2d 1037 (1961); *Malinski v. New York,* 324 U.S. 401, 404, 65 S.Ct. 781, 783, 89 L.Ed. 1029 (1945); *Brown v. Mississippi,* 297 U.S. 278, 286, 56 S.Ct. 461, 465, 80 L.Ed. 682 (1936); *In re Pate,* 371 P.2d at 505; *Lyons v. State,* 77 Okl.Cr. 197, 138 P.2d 142 (1943), aff'd, 322 U.S. 596, 64 S.Ct. 1208, 88 L.Ed. 1481 (1944).

13. *Culombe,* 367 U.S. at 584, 81 S.Ct. at 1869.

its application; [14] 5) that, upon arrest or conviction, any proceedings for revocation of bond shall at the least afford notice and an opportunity for a hearing, and orders shall not issue ex parte; [15] 6) in criminal proceedings, that a defendant have competent counsel (or validly waive counsel), have an opportunity to confront all witnesses against him and to testify and bring witnesses on his own behalf, be advised of the charges against him, have a right to a public trial by jury in the locality in which the crime was committed, have the jury properly instructed, and have the assistance of experts necessary for his defense (upon showing of need); [16] 7) that a defendant should not be tried before the jury in shackles or bonds; [17] 8) that, in a criminal prosecution, the State shall provide the defense exculpatory material; [18] 9) that, at trial, co-defendants with mutually antagonistic defenses shall not be forced to participate in a joint trial; [19] 10) that the State refrain from engaging in egregious and overzealous prosecution which may affect a jury verdict and thus deprive a defendant of his right to a fair trial; [20] 11) that the State's knowing use of perjured testimony to convict a defendant result in a negation of the process normally afforded by notice and hearing; [21] 12) that where a case is submitted to a jury on alternative theories and one of those theories is infirm, the conviction must be set aside; [22] 13) in juvenile proceedings, that juveniles receive protection of appropriate procedures in both juvenile court and reverse certification proceedings; [23] 14) in mental incompetency proceedings, that, at a minimum, the ward receive written notice and a hearing in which the rights afforded a defendant at trial apply.[24]

This list is illustrative only and does not begin to exhaust the myriad forms which due process may take. It clearly shows that while, at a minimum, due process requires both notice and an opportunity for a hearing according to established procedures, these elements cannot satisfy or even accurately describe the parameters of the Due Process Clause.[25] This Court has held:

> [W]e are not unmindful that sustaining procedural rules that [sic] give form and symmetry to the law, but quite frankly we

**14.** *May v. State*, 788 P.2d 408 (Okl.Cr.1990); *Whitney v. California*, 274 U.S. 357, 368, 47 S.Ct. 641, 645–46, 71 L.Ed. 1095 (1926) (criminal syndicalism). *Whitney* also holds that the Due Process Clause is not violated where the state punishes speech which menaces the peace and welfare of the state. 274 U.S. at 371, 47 S.Ct. at 646–47. This Court cited *Whitney* when upholding a similar Oklahoma criminal syndicalism statute in *Shaw v. State*, 76 Okl.Cr. 271, 134 P.2d 999 (1943). Although the syllabus in *Shaw* suggests that due process is satisfied by legal procedures which operate on all alike without subjecting an individual to the arbitrary, unrestrained exercise of the powers of government, the opinion does not discuss due process beyond quoting the syllabus in *Whitney*.

**15.** *Nauni v. Cannon*, 628 P.2d 372 (Okl.Cr.1981); *Petition of Humphrey*, 601 P.2d 103, 107 (Okl.Cr. 1979).

**16.** *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); *Brown*, 297 U.S. at 286, 56 S.Ct. at 465; *Powell v. Alabama*, 287 U.S. 45, 71, 53 S.Ct. 55, 65, 77 L.Ed. 158 (1932); *Rogers v. State*, 890 P.2d 959 (Okl.Cr.1995); *Green v. State*, 881 P.2d 751, 752 (Okl.Cr.1994); *Ward v. State*, 444 P.2d 255, 261 (Okl.Cr.1968), *cert. denied*, 393 U.S. 1040, 89 S.Ct. 665, 21 L.Ed.2d 588 (1969); *Hollins*, 14 P.2d at 245–6.

**17.** *French v. State*, 377 P.2d 501, 502–3, 505 (Okl.Cr.1962), *overruled in part*, *Peters v. State*, 516 P.2d 1372, 1374 (Okl.Cr.1973) (majority opinion and Bussey, J., concurring).

**18.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *Sadler v. State*, 846 P.2d 377 (Okl.Cr.1993).

**19.** *Neill v. State*, 827 P.2d 884 (Okl.Cr.1992).

**20.** *McCarty v. State*, 765 P.2d 1215, 1222 (Okl.Cr. 1988); *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 342, 79 L.Ed. 791 (1935) (use of perjured testimony).

**21.** *Hysler v. Florida*, 315 U.S. 411, 413, 62 S.Ct. 688, 86 L.Ed. 932 (1942); *Mooney*, 294 U.S. at 112, 55 S.Ct. at 342.

**22.** *Stromberg v. California*, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931); *Tibbs v. State*, 819 P.2d 1372, 1373 (Okl.Cr.1991) (alternative theories of guilt).

**23.** *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *M.L.R. v. State*, 740 P.2d 1201 (Okl.Cr.1987); *Edwards v. State*, 591 P.2d 313, 321–22 (Okl.Cr.1979).

**24.** *In re Guardianship of Deere*, 708 P.2d 1123, 1126 (Okl.Cr.1985).

**25.** *Powell*, 287 U.S. at 68, 53 S.Ct. at 64.

are inclined to the principle that these are but means to the end of overall justice, and where procedural rules become an obstacle to the administration of justice or the attainment of its end in a case, we would not hesitate to sweep them under the rug to reach the heart of the matter...." [citations omitted][26]

Although I concur in the result reached by the majority, I am unable to join in the narrow view of the Due Process Clause as set forth in *Cooper*.

STRUBHAR, Judge, concurring in result.

I agree with the majority that the judgment and sentence in this case should be affirmed. However, I write separately to address the Majority's erroneous conclusion that a sentencer may impose the death penalty without considering mitigating evidence and not run afoul of the Eighth Amendment's bar against arbitrary and unreliable impositions of the death penalty. *See*, Majority, op. at 510–12.

I agree with the Majority that a competent defendant may waive his personal right to present mitigating evidence. *See*, 21 O.S. 1991, § 701.10(C)[1]. I further agree that Appellant's wishes not to present mitigating evidence in the instant case did not deprive the State of Oklahoma of its interests that Appellant's sentence be imposed in a constitutionally sound manner because mitigating evidence was considered by the sentencer. *See*, Majority, op. at 512.

However, I cannot agree that a sentencer may impose the death penalty without considering mitigating evidence present in a case simply because the defendant elects not to present any evidence in mitigation. Under our statutory scheme, a sentencer may impose the death penalty only if the aggravating circumstances proven beyond a reasonable doubt outweigh the mitigating circumstances beyond a reasonable doubt. *See*, 21

O.S.1991, § 701.11 If the sentencer does not hear the mitigating evidence, it cannot discharge its statutory duty. A reliable capital sentencing trial requires an individualized determination on the basis of the character of the individual and the circumstances of the crime. Therefore, the sentencer should hear and consider all relevant testimony and evidence in mitigation of punishment. Such a procedure not only protects the interests of the accused, but also protects the interests of the State of Oklahoma to enact and enforce a constitutional death penalty scheme.

As Judge Knight recognized in this case, his responsibilities were much broader than Appellant's wishes, and the imposition of the death penalty would be authorized only if, as here, the court satisfied itself 1) that the existence of at least one statutory aggravating circumstance was proven beyond a reasonable doubt, and 2) considering all the facts and circumstances presented to the court, the death sentence was the appropriate punishment. 21 O.S.1991, § 701.11.

In view of the concern for reliability inherent in our death penalty procedures, including the mandatory sentence review by this Court, *see* 21 O.S.1991, § 701.13(C), the trial court in a case like this has an obligation to conduct an independent investigation into the possible existence of evidence in mitigation. Oftentimes, mitigating evidence such as youth, bouts of mental illness and substance abuse will be apparent from the record without a defendant supplying such information. The trial court here undertook to inform itself about Wallace's background and evidence of mitigation by ordering a pre-sentence investigation report prior to sentencing.[2] Even though Judge Knight was under no obligation to order a pre-sentence investigation report, he wisely did so. The report contained mitigating evidence for the judge to consider. The record reflects Judge Knight considered the mitigating evidence and found that the aggravating circum-

---

**26.** *In re Pate*, 371 P.2d at 518.

**1.** Title 21 O.S.1991, § 701.10(C) provides in pertinent part:
   In the sentencing proceeding, evidence *may* be presented as to any mitigating circumstances
   . . .

**2.** Clearly, under the language of 22 O.S.1991, § 982, the trial court was under no statutory obligation to order such an investigative report.

stances outweighed the mitigating circumstances found beyond a reasonable doubt. Thus, no error occurred in this case when the death penalty was imposed.