**Errol BRUNER, Petitioner,**

v.

**William S. MYERS, Jr., Judge, District Court, Oklahoma County, Respondent.**

**No. P–75–22.**

Court of Criminal Appeals of Oklahoma.

Feb. 20, 1975.

William C. Page, Oklahoma City, for petitioner.

Curtis P. Harris, Dist. Atty., Robert J. Mildfelt, Asst. Dist. Atty., Oklahoma County, for respondent.

## OPINION AND DECISION

BRETT, Presiding Judge:

This is an original proceeding in which petitioner, a juvenile, is seeking issuance of the alternative writ of prohibition or mandamus to prevent his being put to trial in the respondent court as an adult, because he has not been properly certified to stand trial as an adult; and he prays that this matter be remanded to the Juvenile Court for a proper certification hearing in accordance with the State Statutes. Because this is a matter of first impression, this Court assumed jurisdiction.

The District Attorney filed a petition in the Oklahoma County District Court, Juvenile Division, hereinafter referred to as the Juvenile Court or the Court, seeking to have petitioner declared to be a "delinquent child," as defined in 10 O.S.1971, (1974 Supp.) § 1101(b). During the juvenile proceedings, the prosecutor filed no motion requesting that the juvenile be certified to stand trial as an adult, but at the conclu-

sion of testimony when both sides rested, the Juvenile Judge on his own motion, and without any other notice advised the parties that he had determined to consider the question of certification, and that he intended to call the juvenile to the witness stand to testify in order to help him determine the juvenile's sophistication and maturity. The juvenile's legal counsel objected strenuously because the court was moving to certify this young man without any prior notice of certification either on behalf of the court or on behalf of the prosecuting attorney. Counsel's objections were overruled and the court proceeded to call the juvenile to the witness stand. The following discourse took place between the court and the juvenile's counsel:

"BY THE COURT: The petitioner rested at this time. Unless you have something you want to present it's the Court's intention to call Errol Bruner to the stand and question him·as to—in order to help me determine his sophistication and maturity. If I find it to be sufficient it is my intention to consider certification of him in this matter.

"BY MR. BRIGGS: At this time I'm going to object very strenuously to the Court moving to certify this young man without any prior notice of certification either on behalf of the Court or on behalf of the prosecuting attorney. I would further object to this Court calling my client to the stand to inquire as to anything as it is his right to remain silent. However—

"BY THE COURT: I don't intend to question him about the alleged offense. My questioning will only go towards his —to assist me in determining his sophistication and maturity.

"BY MR. BRIGGS: I'm going to object for the reason that I don't feel that this Court is competent to determine that. However, we would request that a psychological be performed for the purpose of professionally determining his sophistication and maturity, as has routinely been done in the past in matters of certification.

"BY THE COURT: Before we go any further, I'm just, you know, telling you at this point, I am considering certification. Now, before I make a decision— we haven't finished this preliminary hearing, so I'll give you an opportunity to present anything you want to present on the question of whether or not a crime has been committed or whether or not there is probable cause to believe Errol Bruner should answer for that crime.

"BY MR. BRIGGS: Okay, I would object for the reason that I have had no notice that his hearing would be set as a prosecutive merit hearing instead of a trial. Had I known that, my consultation with my client would have taken a significantly different course than it has to date.

"BY THE COURT: All right. The Court understands you did not have notice in that no motion to certify was filed by the district attorney in this case. It's my opinion as from reading the statutes that it is not required that the district attorney file a motion or give any notice that this may be a certification hearing. Also, my opinion from reading the statutes—frankly, I admit at this point I'm not sure which statute we are operating under, whether it's the one that was enacted last year which sets forth in detail the Kent Guidelines or whether it was the one that was accidentally enacted this year which reestablished the one that was in effect in 1969. But my interpretation of either one of those statutes does not require that the district attorney file a motion to certify and it does require that the Court consider last year's statute if it's still in effect, requires that the Court consider certification in every felony case by it's wording and if it is not in effect any longer an old one was reinstated by the—what the legislature did, then it's my interpretation that after a full investiga-

tion and a preliminary hearing, I may at my discretion continue the juvenile proceeding or certify him capable of knowing right from wrong and be held accountable for his acts as an adult. It is my intention to exercise that discretion and at this point I'm calling a halt to this as a juvenile adjudicatory proceeding to which I feel jeopardy might attach should he be convicted as a juvenile. I believe jeopardy would attach and I am turning this matter into a question of whether or not I will retain jurisdiction over him as a juvenile for the purpose of this trial or certify him to stand trial as an adult in the criminal division. Now—

"BY MR. BRIGGS: I would object to your interrogation of my client for the reason that regardless of which statute is currently ruling, on the basis of the Sheffield case which is now case law, specifies that all seven—pardon me, eight of the Kent Studies should be considered and incorporated into a certification hearing prior to making a decision and that a failure to do so is an abuse of the discretion on the part of the Court.

"BY THE COURT: All right. Let me explain. I intend to use the Kent Studies in that I will set forth, if I certify him, the reasons for certification in an order and I will consider the seriousness of the offense, the manner in which it was committed, whether it was a crime against persons or property, the greater weight being given to a crime against persons especially if injury results, whether or not there was an adult co-defendant involved, his prior record, his chances for rehabilitation under the juvenile system, and his sophistication and maturity. My point is that I don't feel its necessary to send him unless you raise the question of his sanity or the D. A. raises the question of sanity. I don't think the question of sophistication and maturity, which I have to decide eventually, even with the help or non-help of the experts, I don't think it is something I have to have expert testimony on.

"BY MR. BRIGGS: We request that the Court allow us a psychological examination for the purpose of making that determination.

"BY THE COURT: Your request for that purpose is denied.

"BY MR. BRIGGS: Note our exception.

"BY THE COURT: Exception allowed. Now, if you want to request a period of examination at Central State Hospital on the issue of sanity, I would grant that but only on the issue of sanity. I don't believe you have raised that. I don't believe you intend to, do you?

"BY MR. BRIGGS: No sir.

"BY THE COURT: What you are raising is the request that he be examined by a psychologist or psychiatrist to assist the Court in determining his sophistication and maturity. And that request is denied, exception allowed.

"BY MR. BRIGGS: Note our objection to your calling my client.

"BY THE COURT: Before I do, do you have anything else to present on the issue of whether or not a crime was committed or there is probable cause to hold Errol Bruner to answer for one? I don't mean as to matters of defense.

"BY MR. BRIGGS: Yes, I understand that. We demur to the evidence.

"BY THE COURT: Demur to the evidence, overruled, exception allowed.

"BY MR. BRIGGS: Okay, I have nothing further to present at this point.

"BY THE COURT: All right, let the record reflect that over the juvenile attorney's strenuous objection, I am calling Errol Bruner to the witness stand. (Tr. 83——)

■ This proceeding raises two basic questions: (1) "On a petition for juvenile delinquency, can the Juvenile Court, on its own motion after hearing evidence, determine the proceeding to be a 'certification proceeding' instead of a delinquency proceeding as petitioned for?" and, (2) "Is the Juvenile Court required to give reason-

able notice to all parties concerned that the proceeding may be a certification proceeding in lieu of a delinquency proceeding as prayed for in the petition before the court?"

The answer to both questions is "yes." Title 10 O.S.1971, § 1112(b), provides in part:

"[A]fter full investigation and a preliminary hearing, [the juvenile court] may at its discretion continue the juvenile proceeding, or it may certify such child capable of knowing right from wrong, and to be held accountable for his acts, for proper criminal proceedings to any other division of the court which would have trial jurisdiction of such offense if committed by an adult."

The full answer to the second question concerns due process of law as guaranteed by both the Oklahoma Constitution and the United States Constitution. Article II, Section 7, of the Oklahoma State Constitution provides:

"No person shall be deprived of life, liberty, or property, without due process of law."

The pertinent portion of the Fourteenth Amendment to the United States Constitution provides:

"[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

In In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), the United States Supreme Court framed the question in that case:

"This case presents the single, narrow question whether proof beyond a reasonable doubt is among the 'essentials of due process and fair treatment' required during the adjudicatory stage when a juvenile is charged with an act which would constitute a crime if committed by an adult." 397 U.S. at 358–359, 90 S.Ct. at 1070.

In answering this question, the Court reiterated its view stated in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) that:

"[A] proceeding where the issue is whether the child will be found to be a 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution." 387 U.S. at 36, 87 S.Ct. at 1448.

Hence, by the same reasoning, it is logical that a juvenile proceeding in which the juvenile is faced with prosecution in a criminal court as an adult is comparable in seriousness to a felony prosecution.

■ In a criminal trial reasonable notice of the charges and an adequate opportunity to defend against them are basic elements of due process. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158; Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 1337. In Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L.Ed.2d 84 (1966), the United States Supreme Court spoke with reference to the Juvenile Court's waiver of jurisdiction and held that waiver of jurisdiction was a "critically important" stage in the juvenile process and must be attended by minimum requirements of due process and fair treatment required by the Fourteenth Amendment to the United States Constitution. 383 U.S. at 560, 86 S.Ct. 1045. In In re Gault, supra, the Supreme Court spoke to question of notice on the initial charge, as follows:

"Notice, to comply with due process requirements, must be given sufficiently in advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded, and it must 'set forth the alleged misconduct with particularity.'"

It is clear that the consequences of a certification proceeding are no less important in their impact upon a juvenile than those of a delinquency proceeding. It is also clear that the defenses properly raised in a certification proceeding are considerably different from those properly raised in a delinquency proceeding. It is therefore

necessary to conclude that since due process requires notice for preparation for a delinquency proceeding, it likewise requires notice for preparation for the certification proceeding, and we so hold herein.

In the instant matter, defense counsel was admittedly prepared to meet the requirements premised upon the delinquency petition, but when the Juvenile Judge, without prior notice, informed the parties that he was considering certifying this petitioner, defense counsel stood shorn of his prepared defenses. The court should have continued the matter to a future date certain in order to permit defense counsel to muster his defenses to meet the new requirements. This was not done, however.

We are therefore of the opinion, and so hold, that the Juvenile Judge must provide reasonable notice to all parties concerned when the Juvenile Judge exercises his discretion under the provisions of 10 O.S.1971, § 1112(b), and treats a delinquency petition as being a petition for certification. This notice is required in order to allow the accused juvenile to prepare to meet the new requirements. We hold further, when the Juvenile Court specifies in the record the reason for continuing the juvenile proceeding, that being to permit the juvenile to prepare to meet a certification requirement, jeopardy does not attach under the Juvenile Code. In the instant matter, the juvenile was not afforded sufficient notice that comports with due process; and, therefore, this matter should be remanded to the Juvenile Court for that purpose.

It is therefore the order of this Court that the writ of mandamus shall issue; and it is further ordered that Oklahoma County District Court, Juvenile Division, Case No. JF–74–512, shall be remanded to said Juvenile Court for further consideration in accordance with the provisions herein contained.

Writ granted.

BUSSEY and BLISS, JJ., concur.