2009 OK CR 7

**Alton A. HORN, III, Appellant**

v.

**STATE of Oklahoma, Appellee.**

No. F–2007–1240.

Court of Criminal Appeals of Oklahoma.

March 6, 2009.

Jacob Benedict, Robin McPhail, Assistant Public Defenders, Oklahoma City, OK, Counsel for Appellant at trial.

C. Wesley Lane, II, District Attorney, Suanne Carlson, Assistant District Attorney, Oklahoma City, OK, Counsel for the State at trial.

Kim Chandler Baze, Assistant Public Defender, Oklahoma City, OK, Counsel for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Keeley L. Harris, Assistant Attorney General, Oklahoma City, OK, Counsel for the State on appeal.

## *OPINION*

LUMPKIN, Judge.

¶ 1 Appellant Alton A. Horn, III, was tried by jury for First Degree Rape (Counts 1–18) (21 O.S.1991, § 1114); and Forcible Oral Sodomy (Counts 19–30) (21 O.S.Supp.1992, § 888), Case No. CF–2005–4708, in the District Court of Oklahoma County. The trial court dismissed Counts 5, 19, and 23, after sustaining in part the defendant's demurrer to the evidence at the conclusion of the State's case. The jury acquitted the defendant on Counts 12–17. The jury found the defendant guilty on the remaining counts and recommended as punishment fifty (50) years imprisonment in each of Counts 1–4, 6–11 and 18, and ten (10) years imprisonment in each of Counts 20–22, and 24–30. The trial court sentenced accordingly, ordering the sentences to run concurrently to each other but consecutively to sentences imposed in the District Court of Beaver County, Case No. CF–2005–4. It is from this judgment and sentence that Appellant appeals.

¶ 2 At the time of trial, J.E. was 23 years old. She testified that Appellant, her stepfather, had sexually abused her from the time she was 12 years old until she was 16 years old (1996–2000). J.E. testified she did not tell anyone of the abuse because of Appellant's threats to make her "disappear" if she told. The abuse occurred in different rooms of their Midwest City home, usually when J.E.'s mother was at work or school, and often times when J.E.'s siblings were home but in other rooms of the house. J.E. said that Appellant would often restrain her by holding her shoulders with his hands, grabbing her wrists, or putting his hands on her neck to keep her from moving. Appellant often told J.E. that her vagina "was so tight that [she] made him come fast."

¶ 3 J.E. also testified to one evening in 1997 when Appellant took her with him to Oklahoma City Community College where he worked as a security guard. J.E. testified that as she waited for him on a bench outside, he approached her, pulled his pants down just far enough, took out his penis and forced it in her mouth. She said he held her head with both hands and moved it where he wanted it.

¶ 4 In 2000, the family moved from Midwest City to Beaver where Appellant was employed as a police officer. J.E. testified the abuse continued not only in their home but elsewhere. She testified that on at least one occasion, Appellant forced her to orally sodomize him while in the police car. J.E. said Appellant carried a gun as part of his job and he was on duty at the time of the crime. She also testified to an incident where Appellant forced her to have intercourse with him in an abandoned trailer, near the city airport.

¶ 5 In November 2000, J.E. moved out of her home and went to live with her biological father and stepmother. However, by 2002, she moved back in with her mother, Ada Horn. By that time, Ada Horn and Appellant had separated with their divorce to become final in 2003. J.E. did not tell anyone about the abuse until 2005, when she was 21 years old. After being confronted by her roommate Carrie Woods about rumors concerning herself and Appellant, J.E. told Woods about the abuse. About that time Appellant phoned J.E.'s mother and said, "I'm going to apologize now before everything explodes." Though he did not mention J.E. at the time, Appellant phoned Mrs. Horn again a few days later and asked why J.E. was spreading rumors about her sleep-

ing with him. As J.E. had not said anything to her mother about the abuse, Mrs. Horn spoke to several people, including Woods about the rumors mentioned by Appellant. Mrs. Horn and Woods urged J.E. to go to the Beaver police and from there she was referred to the authorities in Midwest City.

¶ 6 Near the time J.E. and Woods went to the police, Appellant telephoned J.E. but Woods answered the phone. Woods told Appellant that J.E. had told her something and "this is your chance to tell me your side to tell me anything ... She says you all have had sex. Is this true?" Appellant responded, "I'm going to tell you things happened that shouldn't have, and I can't tell you it's not true." When Woods asked him if this happened when J.E. was 13 years old, Appellant hung up on her.

¶ 7 Brandi McKeever testified at trial that she was 18 years old in 2000 when she began a relationship with Appellant. She said she was a friend of J.E.'s older sister. It quickly developed into a sexual relationship. McKeever testified that in comparing her to his then wife, Ada, Appellant told her she "was so tight that [she] made him come fast." McKeever married Appellant in October 2004 and divorced him in January 2005. McKeever testified that in "clearing the air before their marriage, she asked Appellant if there was anything he had not told her." She said Appellant told her that when J.E. was 12 years old, J.E. walked in on Appellant having sex with J.E.'s friend, "A". Later that day, J.E. tried to give Appellant oral sex, but he pushed her away. (J.E. testified she had a friend A.H. who would often spend the night at her house). McKeever said that at another time, Appellant told her "some women found it a turn on to be held down as if they were being raped."

¶ 8 The defense presented no witnesses but argued the State failed to prove beyond a reasonable doubt that Appellant committed the charged offenses.

¶ 9 In his first proposition of error, Appellant contends the trial court erred in admitting evidence of other crimes. Specifically, he complains of evidence of "consensual sex with Brandi McKeever involving statements regarding Appellant's sexual preferences" and evidence of alleged sexual conduct with the victim which occurred in Beaver County and was not the basis for the criminal charges filed in Oklahoma County.

¶ 10 The record shows the State filed a pre-trial Notice of Intent to Introduce Evidence of Other Crimes, specifically the sexual offenses committed by Appellant in Beaver County, in order to prove Appellant's "motive, intent, identity and method of operation." Six months later, the State filed another notice outlining its intent to offer evidence of Appellant's sexual assault on 14 year old A.H. as *res gestae* or in the alternative to prove Appellant's "plan, design, intent and lack of mistake." The defense objected to both motions and a hearing was held. At the hearing, the prosecutor argued the evidence was admissible under 12 O.S.2001, § 2404(B) and 12 O.S.Supp.2007, § 2413(A). Defense counsel argued the evidence was not relevant and the application of § 2413(A) violated his constitutional rights and could not be applied retroactively to his case. The trial court overruled the defense objection and admitted the evidence under both §§ 2404(B), 2413 and 2414.[1]

¶ 11 Now on appeal, Appellant argues that 12 O.S.Supp.2007, § 2413 is unconstitutional as it violates his equal protection and due process rights under the 5th and 14th Amendments to the United States Constitution and Art. II, § 7 of the Oklahoma Constitution. The record in this case reflects that prior to trial, Appellant claimed § 2413 violated his due process rights. However, he raised no claim regarding equal protection. Therefore, while Appellant has preserved his due process claim for appellate review, he has waived his equal protection claim for all but plain error review. *See Simpson v.*

1. Title 12 O.S.Supp.2007, § 2414 is the same as § 2413 except that it pertains to the admissibility of evidence of other acts of child molestation in cases in which the defendant is accused of child molestation. Similarly, Fed.R.Evid. 414 is a companion to Rule 413 and allows admission of the defendant's other acts of child molestation in cases where the defendant stands accused of child molestation. The federal courts often address Rules 413 and 414 together.

781

*State,* 1994 OK CR 40, ¶ 11, 876 P.2d 690, 693.

¶ 12 This is this Court's first opportunity to review the constitutionality of § 2413. When analyzing the constitutionality of a legislative act, "[e]very presumption must be indulged in favor of the constitutionality of the act, and it is the duty of the courts, whenever possible, to harmonize acts of the Legislature with the Constitution." *State v. Hall,* 2008 OK CR 15, ¶ 23, 185 P.3d 397, 403. "Statutes are to be liberally construed 'with a view to effect their objects and to promote justice.'" *Id.,* quoting 25 O.S. 2001, § 29. "The constitutionality of a statute will be upheld unless it is 'clearly, palpably, and plainly inconsistent with fundamental law.'" *Id.,* quoting *State v. Howerton,* 2002 OK CR 17, ¶ 16, 46 P.3d 154, 157–158. "Parties alleging the unconstitutionality of a statute have the burden of proof." *Id.*

¶ 13 Title 12 O.S. Supp.2007, § 2413 provides:

A. In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.

B. In a case in which the state intends to offer evidence under this rule, the attorney for the state shall disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered, at least fifteen (15) days before the scheduled date of trial or at such later time as the court may allow for good cause.

C. This rule shall not be construed to limit the admission or consideration of evidence under any other rule.

. . .

¶ 14 Oklahoma's Due Process and Equal Protection provisions are the same as those found in the Federal Constitution. *See Sawatzky v. City of Oklahoma City,* 1995 OK CR 69, ¶ 4, 906 P.2d 785, 786 ("[t]he right to equal protection guaranteed under Oklahoma's Constitution has consistently been interpreted as coextensive with the right to equal protection guaranteed under the federal constitution."); *Callaway v. City of Edmond,* 1990 OK CR 25, ¶ 8, 791 P.2d 104, 106 n. 1 ("[o]ur due process clause in Art. 2 Sec. 7, Okl. Const., has a definitional range that is coextensive with its federal counterpart. . . ."). "It is well established that this State may grant protections to its citizens that are more expansive than those conferred by federal law." *Gomez v. State,* 2007 OK CR 33, ¶ 14, 168 P.3d 1139, 1145. However, we have not chosen to do so. In addition, "this Court's independent interpretation of Oklahoma constitutional provisions is not circumscribed by United States Supreme Court interpretations of similar federal provisions." *Id.* But "if construction of federal constitutional provisions made by the United States Supreme Court appears to rest on 'sound principles,' the decisions of this Court construing equivalent provisions of the Oklahoma Constitution should harmonize with those of the United States Supreme Court construing the federal constitution." *Id.,* 2007 OK CR 33, ¶ 15, 168 P.3d at 1145. Section 2413 restates verbatim Federal Rule of Evidence 413(a). While the United States Supreme Court has yet to rule on the constitutionality of Rule 413, the decisions of the federal appellate courts interpreting Rule 413 and finding it constitutional rest on sound principles and offer guidance in this Court's analysis and interpretation of § 2413.

¶ 15 Federal courts have said that Rule 413, "provide[s] an exception to the general rule codified in Rule 404(a) which prohibits the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts." *United States v. Benally,* 500 F.3d 1085, 1089 (10th Cir.2007). *See also United States v. Dillon,* 532 F.3d 379, 387 (5th Cir.2008) (Rule 413(a) "allows the admission of evidence of prior sexual assaults for any relevant purpose, including to show propensity, in sexual assault cases."); *United States v. Hawpetoss,* 478 F.3d 820, 823 (7th Cir.2007) (Rule 413 "create[s] an exception to the general rule against 'propensity evidence' found in [Rule 404(b) ].") Numerous federal courts have found Rule 413(a) withstands due process and equal protection challenges. *See Dillon,* 532 F.3d at 387; *Benally,* 500 F.3d at 1092; *Hawpetoss,* 478 F.3d at 823; *United*

*States v. Seymour,* 468 F.3d 378, 385 (6th Cir.2006); *United States v. LeMay,* 260 F.3d 1018, 1026 (9th Cir.2001).

¶ 16 In conducting a due process analysis of Rule 413 in *United States v. Enjady,* 134 F.3d 1427 (10th Cir.1998), the Tenth Circuit Court of Appeals stated:

> In order to prove a due process violation defendant must show that Rule 413 fails the "fundamental fairness" test and "violate[s] those fundamental conceptions of justice which lie at the base of our civil and political institutions." *Dowling v. United States,* 493 U.S. 342, 352–53, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990) (citations and quotations omitted). The Supreme Court has defined narrowly those infractions that violate fundamental fairness, and declared that "[b]eyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation." *Id.* at 352, 110 S.Ct. at 674; see also *United States v. Lovasco,* 431 U.S. 783, 789–90, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977).

134 F.3d at 1430.

¶ 17 In *Enjady,* the defendant argued that the historic exclusion of prior bad acts evidence to prove propensity to commit the charged crime is so basic to our criminal justice system that it falls within the narrowly defined "fundamental fairness" arena. The Tenth Circuit replied "[t]hat the practice [of excluding prior bad acts evidence to prove propensity] is ancient does not mean it is embodied in the Constitution." 134 F.3d at 1432. The Court recognized that "[m]any procedural practices-including evidentiary rules-that have long existed have been changed without being held unconstitutional. The enactment of the Federal Rules of Evidence and subsequent amendments are examples." *Id.* ("[v]arious exceptions to this exclusionary rule have developed. For example, prior bad acts evidence may be used to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, and to impeach. *See, e.g.,* Fed.R.Evid. 404(b), 405, 406, 608 and 609.") *Id.,* at 1430–1431.

¶ 18 The Tenth Circuit noted that "[i]n passing Rule 413 Congress believed it necessary to lower the obstacles to admission of propensity evidence in a defined class of cases. Its rationale for sexual assault cases includes the assistance it provides in assessing credibility.... Rule 413 is based on the premise that evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes, and often justifies the risk of unfair prejudice. Congress thus intended that rules excluding this relevant evidence be removed." *Id.,* at 1431.

¶ 19 The Tenth Circuit said that "[t]he principal arguments that Rule 413 is unconstitutional are based, at least in part, on the assumption that Rule 403 is inapplicable." *Id.* However, the Court found that admission of evidence under 413 was subject to the balancing of Fed.R.Evid. 403:

> The Supreme Court has recognized that prior instances of violent behavior are an important indicator of future violent tendencies. Nevertheless, without the safeguards embodied in Rule 403 we would hold the rule unconstitutional.

> Rule 403 requires that if the trial court concludes the probative value of the similar crimes evidence is outweighed by the risk of unfair prejudice it must exclude the evidence. But the exclusion of relevant evidence under Rule 403 should be used infrequently, reflecting Congress' legislative judgment that the evidence "normally" should be admitted ... Considering the safeguards of Rule 403, we conclude that Rule 413 is not unconstitutional on its face as a violation of the Due Process Clause.

134 F.3d at 1432–1433 (certain citations omitted).

¶ 20 More recently in *United States v. Benally,* 500 F.3d 1085 (10th Cir.2007) the Tenth Circuit said:

> Federal Rules of Evidence 413 and 414 address propensity evidence in the context of sexual assault and child molestation. These rules provide an exception to the general rule codified in Rule 404(a), which prohibits the admission of evidence for the purpose of showing a defendant's propensity to commit bad acts. Pursuant to Rule 413(a), when "the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of

another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant." Rule 414(a) contains identical language related to accusations of child molestation. Consistent with congressional intent regarding the admission of evidence tending to show the defendant's propensity to commit sexual assault or child molestation, "courts are to 'liberally' admit evidence of prior uncharged sex offenses...." Even where evidence is determined to be relevant, however, the admissibility of Rule 413/414 evidence is subject to the Rule 403 balancing test, which permits the exclusion of relevant evidence "'if its probative value is substantially outweighed by the danger of unfair prejudice.'"

500 F.3d at 1089–1090 (footnotes omitted, citations omitted).

¶ 21 This Court has stated that due process is "older than written Constitutions," and the phrase "is synonymous with 'law of the land' as found in Magna Charta (sic)." *Ex Parte Hollins,* 54 Okl.Cr. 70, 75, 14 P.2d 243, 245 (1932). *See generally Dartmouth College v. Woodward,* 17 U.S. (4 Wheat.) 518, 4 L.Ed. 629 (1819) (same principle). "Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Hatch v. State,* 1996 OK CR 37, ¶ 29, 924 P.2d 284, 290–291 *quoting Cafeteria and Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). Rather, "due process is flexible and calls for such procedural protections as the particular situation demands." *Id. quoting Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). "The quintessential requirements of due process are notice and opportunity to be heard." *Id.,* at n. 3. *See also Bruner v. Myers,* 1975 OK CR 41, ¶ 6, 532 P.2d 458, 461, ("[i]n a criminal trial reasonable notice of the charges and an adequate opportunity to defend against them are basic elements of due process.") In *Hatch,* this Court further stated:

However, it must also be remembered that the term denotes more than simply the law

of the land or the law as it was at the time the constitution took effect:

For that would seem to deny to the legislature the power to alter, change or amend the law. Yet we know that it is every day's practice for the law-making department of the government to repeal old laws, enact new, and change remedies.

The principle does not demand that the laws existing at any point of time shall be irrepealable, or that any forms of remedies shall necessarily continue.

It refers to certain fundamental rights which that system of justice, of which ours is a derivative, has always recognized. If any of these are disregarded, in the proceedings by which a person is condemned to the loss of life, liberty or property, then the deprivation has not been by "due course of law."

1996 OK CR 37, ¶ 30, 924 P.2d at 291 (citations omitted).

¶ 22 In the present case, the record clearly shows Appellant received pre-trial notice and the opportunity to be heard concerning the State's intent to use the other crimes/propensity evidence. Now on appeal, he argues admission of the evidence denied him the right to a fundamentally fair trial in violation of due process.

¶ 23 In *James v. State,* 2007 OK CR 1, ¶ 4, 152 P.3d 255, 257, this Court overturned the "greater latitude" rule adopted in *Myers v. State,* 2000 OK CR 25, 17 P.3d 1021, finding it "unworkable." In my dissent, I addressed the history of the "greater latitude" rule. On the basis of cited case law, I stated in part that "the idea of 'greater latitude' [has] existed in Oklahoma for many years prior to *Myers* ... Moreover, if you flip through the pages of our evidence code, you will see that sex-related crimes are treated differently and that greater latitude in this area is a common theme, one that our Legislature has repeatedly recognized." 2007 OK CR 1, ¶¶ 8–9 & 11, 152 P.3d at 258–59 (Lumpkin, VPJ., dissenting) (footnotes omitted).

¶ 24 Our history of admitting or excluding propensity evidence is ambiguous at best. However, as stated in *United States v. Castillo,* 140 F.3d 874 (10th Cir.1998):

The existence of this ambiguity does not leave us uncertain of the constitutional result, however; rather, it favors the government ... It is not the [government] which bears the burden of demonstrating that its rule is 'deeply rooted,' but rather [the defendant] who must show that the principle of procedure violated by the rule (and allegedly required by due process) is 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.

140 F.3d at 881–882.

¶ 25 Here, Appellant has failed to show that the exclusion of sexual propensity evidence is so "deeply rooted" in Oklahoma as to fall within the narrowly defined "fundamental fairness" arena.

¶ 26 Further, § 2404(B) allows for the introduction of evidence of a defendant's other crimes or bad acts to show "proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." 12 O.S.2001, § 2404(B). Section 2404(B) is virtually the same as Federal Rules of Evidence 404(b). That § 2404(B) permits the introduction of evidence of a defendant's other crimes, despite the risk of prejudice, weighs heavily in favor of the conclusion that § 2413 does not fall within the narrowly defined "category of infractions that violate fundamental fairness." *Castillo,* 140 F.3d at 881.

¶ 27 Section 2413 specifically states, "[t]his rule shall not be construed to limit the admission or consideration of evidence under any other rule." 12 O.S. Supp.2007, § 2413(C). By this language, the Legislature clearly intended relevant propensity evidence to be treated as any other relevant evidence and thus subject to the weighing of its probative value versus its prejudice as set forth in 12 O.S.2001, §§ 2402 and 2403.[2] With the safeguards put in place by these sections, any due process concerns posed by the admission of the evidence under § 2413 are eliminated.

¶ 28 For the foregoing reasons, Appellant has failed to show that § 2413 violates the Due Process Clause of either the State or Federal Constitution.

¶ 29 Appellant also claims that § 2413 violates his right to equal protection because it allows unequal treatment of similarly situated defendants concerning a fundamental right. The same challenge to Rule 413 was raised in *Enjady.* There, the Tenth Circuit said:

If a law neither burdens a fundamental right nor targets a suspect class, we will uphold the legislative classification so long as it bears a rational relation to some legitimate end ... Under our due process analysis Rule 413 does not violate, on its face, a defendant's fundamental right to a fair trial. Thus the rational basis test applies, and a "strong presumption of validity" attaches to the evidentiary classification made in enacting Rule 413 ... Congress' objective of enhancing effective prosecution for sexual assaults is a legitimate interest. The nature of sex offense prosecutions frequently involves victim-witnesses who are traumatized and unable to effectively testify, and offenders often have committed many similar crimes before their arrest on the charged crime ... Defendant's equal protection claim is without merit.

134 F.3d at 1433–34 (citations omitted).

¶ 30 *Enjady* is illustrative of the many federal cases which, in addressing an equal protection challenge, have referred back to their due process analysis to find that the challenged rule does not impermissibly interfere with the defendant's fundamental right to a fair trial. *See Enjady,* 134 F.3d at 1434; *Castillo,* 140 F.3d at 883. *See also LeMay,* 260 F.3d at 1026.

¶ 31 This Court has had several opportunities to conduct a review under the Equal Protection Clause. In *Crawford v. State,* 1994 OK CR 58, 881 P.2d 88, we stated:

**2.** Title 12 O.S.2001, § 2402, provides: "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of the State of Oklahoma, by statute or by this Code. Evidence which is not relevant is not admissible." "Although relevant,

evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise." 12 O.S.2001, § 2403.

The process for analyzing the constitutionality of a statute under the Equal Protection Clause has been previously set forth in *Swart v. State,* 720 P.2d 1265 (Okl.Cr. 1986). In *Swart* we stated:

In analyzing the constitutionality of a statute under the equal protection clause, the U.S. Supreme Court has developed a two tiered test: First, the Court has held that "equal protection analysis requires strict scrutiny of a legislative classification ... when the classification impermissibly interferes with the exercise of a fundamental right or operates to the peculiar disadvantage of a suspect class." Classifications subjected to strict scrutiny will be upheld only if they are substantially related to an extremely important or compelling end of government. If the classification does not invoke analysis under the strict scrutiny tier, the legislation is then analyzed under the "rational relationship test." Under this approach, a legislative classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike." In short, the challenged classification must be "rationally related to a legitimate state interest." Under this second tier, "a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect."

1994 OK CR 58, ¶ 5, 881 P.2d at 90 (citations omitted). *See also Hatch,* 1996 OK CR 37, ¶¶ 21–22, 924 P.2d at 289 ("[l]egislatures have a wide range of discretion when passing laws which have the effect of treating some differently from others ... To show an equal protection violation Petitioner must show that 22 O.S. Supp.1995, § 1089 impermissibly interferes with his exercise of a fundamental right or operates to the peculiar disadvantage of him as a member of a suspect class. If a petitioner fails to make that showing (which requires application of the strict scrutiny standard), he must prove that the statute is not rationally related to a legitimate state interest, also called the 'rational relationship test.' ")

¶ 32 In the present case, Appellant does not argue, nor can he establish that he is a member of a suspect class. *See Castillo,* 140 F.3d at 883 ("the defendant [on trial for sexual abuse and sexual abuse of a minor] does not belong to a suspect class ... While the rule does treat those accused of child molestation differently than other criminal defendants, such a classification is not subject to a heightened standard of review"); *Wackerly v. State,* 2000 OK CR 15, ¶ 54, 12 P.3d 1, 17 ("Appellant does not argue that he is a member of a suspect class...").

¶ 33 Instead, he argues § 2413 cannot survive a strict scrutiny analysis as the statute "impermissibly interferes with a fundamental right under Oklahoma law—the right to be convicted, if at all, by evidence of the charged offense and not by evidence of similar offense which show a propensity to commit the crime charged." In support of his argument Appellant cites to *Bryan v. State,* 1997 OK CR 15, ¶ 33, 935 P.2d 338, 356 and *Roulston v. State,* 1957 OK CR 20, ¶ 11, 307 P.2d 861, 867. In both cases this Court merely reiterated the well established rule set forth above. However, neither case referred to it as a fundamental right and even recognized exceptions to the rule. The issue in this case is the application of a state evidentiary rule—not a fundamental, constitutional right. Therefore, Appellant has not shown that § 2413 violates a fundamental right or violates his right to a fair trial.

¶ 34 Having determined that § 2413 does not violate a fundamental right, and Appellant has failed to show that he is a member of a "suspect" class for purposes of equal protection analysis, we will apply the rational relationship test. "The Supreme Court has stated that under the rational relationship test, "[a] statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." *Crawford,* 1994 OK CR 58, ¶ 8, 881 P.2d at 91, quoting *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

¶ 35 In discussing the governmental interest underlying Rule 413, the Tenth Circuit said:

Congress' objective of enhancing effective prosecution for sexual assaults is a legiti-

mate interest. The nature of sex offense prosecutions frequently involves victim-witnesses who are traumatized and unable to effectively testify, and offenders often have committed many similar crimes before their arrest on the charged crime. *Enjady*, 134 F.3d at 1434.

¶ 36 In *United States v. Hawpetoss*, 478 F.3d 820 (7th Cir.2007) the Seventh Circuit stated:

Congress enacted these new rules [Rules 413 and 414] to 'protect [ ] the public from rapists and child molesters.... In child molestation cases, for example, a history of similar acts tends to be exceptionally probative because it shows an unusual disposition of the defendant ... that simply does not exist in ordinary people.'

478 F.3d at 824, note 7.

¶ 37 "Unfortunately, sex crimes are crimes of propensity—a proclivity that rarely goes away.... Sexual crimes committed against women and children, therefore, present special evidentiary issues when a person charged with such crimes is bound over and brought to trial." *James*, 2007 OK CR 1, ¶¶ 2–4, 152 P.3d at 257–258 (Lumpkin, VPJ., dissenting).

¶ 38 The need for corroborating evidence in cases of child sexual abuse due to the highly secretive nature of the crime, together with the protection of the public from sex offenders whose history of similar acts tends to be exceptionally probative, justifies the enactment of § 2413 and provides a rational basis for its enactment. By enacting § 2413 the Legislature determined that evidence of other similar crimes involving sexual assault and child molestation was probative of a defendant's propensity to commit such crimes. Section 2413 does not violate the Equal Protection Clause of either the State or Federal constitution.

¶ 39 Anticipating this finding, Appellant asserts that even if this Court finds § 2413 does not violate Due Process and Equal Protection Clauses, the procedural requirements mandated by the Tenth Circuit with regard to Rules 413 and 414 must be scrupulously followed in balancing the probative value of the propensity evidence against its prejudicial effect.

¶ 40 Sections 2413 and 2414 are clearly subject to the balancing test of § 2403. In determining the relevance of propensity evidence, the federal courts have set out very specific procedural requirements to be followed. While we find these requirements instructional, state trial courts are not obligated to strictly adhere to those mandates. Instead, trial courts should consider, but not be limited to the following factors: 1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the dangers that admission of propensity evidence poses, the trial court should consider: 1) how likely is it such evidence will contribute to an improperly-based jury verdict; and 2) the extent to which such evidence will distract the jury from the central issues of the trial. *See Enjady*, 134 F.3d at 1433. Any other matter which the trial court finds relevant may be considered. In particular, as proof of the prior act may largely rest upon testimony of the victim of that prior act, the credibility of that individual would be a factor for the court's consideration. Further, the propensity evidence must be established by clear and convincing evidence.[3] If the defense raises an objection to the admission of the propensity evidence, the trial court should hold a hearing, preferably pre-trial, and make a record of its findings as to the factors set forth above.

¶ 41 In the present case, the purpose for introducing evidence of Appellant's prior sexual assaults was to provide the jury with probative propensity evidence. The trial court clearly weighed the probative value of the propensity evidence against its prejudicial effect. The trial court did not abuse its discretion in finding the relevance of such evidence was not substantially outweighed by

---

3. We recognize the federal courts require the propensity evidence to be established by a preponderance of the evidence. However, we find that in Oklahoma, the evidence must be established by clear and convincing evidence.

the danger of unfair prejudice, confusion of the issues, or its tendency to mislead the jury. *See Martinez v. State,* 1999 OK CR 33, ¶ 25, 984 P.2d 813, 822 (the admissibility of evidence is within the discretion of the trial judge, and unless a clear abuse of discretion is shown reversal will not be warranted).[4] This assignment of error is denied

■ ¶ 42 In his second proposition of error, Appellant contends he was denied a fair trial by prosecutorial misconduct. Appellant argues the prosecutor made several remarks during closing argument designed to lessen the State's burden of proof, impermissibly vouched for the truthfulness and credibility of the victim, personally attacked Appellant through improper name calling, and relied on facts not in evidence.

■ ¶ 43 "Allegations of prosecutorial misconduct do not warrant reversal of a conviction unless the cumulative effect was such [as] to deprive the defendant of a fair trial." *Warner v. State,* 2006 OK CR 40, ¶ 197, 144 P.3d 838, 891. Having thoroughly considered the challenged comments both individually and cumulatively, we find they did not deny Appellant a fair trial. This assignment of error is denied.

■ ¶ 44 In his final proposition of error, Appellant contends that many of the charges in this case occurred outside the seven year statute of limitations, therefore prosecution of those offenses were barred. Further, he argues that the State failed to meet its burden of showing that the charged crimes were not discovered before they were reported to the authorities in June 2005.

¶ 45 The Statute of Limitations in effect at the time the charged offenses were committed was 22 O.S. Supp.1994, § 152(C). That section provided:

"C. Prosecutions for the crime of rape or forcible sodomy, pursuant to Sections 888, 1111, 1111.1, 1113 or 1114 of Title 21 of the Oklahoma Statutes, shall be commenced within **seven (7) years after the discovery of the crime.**"[5] (emphasis added).

¶ 46 In *State v. Day,* 1994 OK CR 67, 882 P.2d 1096 this Court stated:

The statute of limitations begins to run and the offense has been 'discovered' for purposes of Sections 152(A) and (C) when any person (including the victim) other than the wrongdoer or someone in pari delicto with the wrongdoer has knowledge of both (i) the act and (ii) its criminal nature ... [T]he crime has not been discovered during any period that the crime is concealed because of fear induced by threats made by the wrongdoer, or anyone acting in pari delicto with the wrongdoer. The application of this statute of limitation is a legal determination to be determined by a judge as a threshold issue. The statute of limitations is a jurisdictional issue and, once asserted, the presumption is that the statute has run and the State has the obligation to overcome this presumption.

1994 OK CR 67, ¶¶ 12–14, 882 P.2d at 1098.

¶ 47 Prior to trial, the defense filed a motion to dismiss asserting that the prosecution was "time barred" by the statute of limitations. The defense disagreed with the State's argument that the statute had been tolled by Appellant's threats to J.E. Pro-

4. Any jury bias that may have resulted from the trial court's decision to admit this evidence would have been mitigated by the court's instruction regarding the jury's use of the evidence. In Instruction No. 15, which is taken verbatim from Oklahoma Uniform Jury Instructions–Criminal (2d) (OUJI–CR) 9-9 and based upon 12 O.S. 2001, § 2404(B), the jury was instructed that the evidence was not to be considered as proof of guilt or innocence but for the limited purpose of showing Appellant's common scheme or plan. Until the time a new jury instruction is drafted pursuant to §§ 2413 and 2414, this instruction is sufficient to limit the jury's consideration of the evidence. We submit this request to the OUJI-CR Committee for the development of a proper instruction.

5. In 2000, the Legislature amended § 152 and expressly defined the term "discovery" as used in the statute of limitations. The Legislature said, "[a]s used in subsection C of this section, 'discovery' means the date that a physical or sexually related crime involving a victim under the age of eighteen (18) years of age is reported to a law enforcement agency, up to and including one (1) year from the eighteenth birthday of the child." This Legislature did not provide for the retroactive application of this amendment and its application is not an issue here.

ceeding on the presumption that the statute had run, the trial court found the presumption had been rebutted as there was sufficient evidence of Appellant's threats of harm to the victim to toll the running of the statute. This ruling is supported by the record.

¶ 48 J.E. repeatedly testified that she did not tell anyone of the offenses at the time because she was scared of Appellant and scared he would do something to her or her mother. She said that every time he abused her, he would tell her that if she was to tell anybody "that bad things could happen to us both" and that he could "make her disappear." J.E. testified she felt Appellant could carry out his threats as he worked as a security guard and carried a gun.

¶ 49 On appeal, Appellant argues that the evidence was insufficient to show that he threatened the victim in light of evidence that she returned to visit Appellant after he sexually abused her. This is not an accurate restatement of J.E.'s testimony. She testified that she returned to Beaver, after having moved out of the family home, to visit her mother. J.E. said she did not see Appellant as he and her mother had "already split up".

¶ 50 J.E. testified the sexual abuse stopped when she moved out of the family home in 2000. Charges were filed against Appellant on August 22, 2005. The record supports a finding that Appellant threatened the victim and because of the threats and the fear they induced in her, J.E. did not tell anyone about the abuse. The seven year statute was therefore tolled until 2000 when J.E. told her roommate about the abuse and she reported it to the Beaver County authorities and the Oklahoma County authorities. Contrary to Appellant's argument, the seven years did not begin running from the date of the earliest offense. The prosecution begun in 2005 was within the seven year statute of limitations, and the trial court properly overruled the motion to dismiss. This assignment of error is denied.

¶ 51 Based upon the foregoing, this appeal is denied.

**DECISION**

¶ 52 The Judgment and Sentence is *AF-FIRMED*. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals,* Title 22, Ch.18, App. (2008), the *MANDATE* is *ORDERED* issued upon delivery and filing of this decision.

LEWIS, J.: concur.

A. JOHNSON, V.P.J.: specially concur.

C. JOHNSON, P.J.: concur in result.

CHAPEL, J.: dissent.

A. JOHNSON, Vice Presiding Judge, specially concurring.

¶ 1 I concur. The fact that Section 2413 may be fraught with the risk of being unfairly applied at trial—and I believe it is—does not make it unconstitutional as written.

¶ 2 The majority opinion clearly requires trial courts to undertake a rigorous analysis of the propensity evidence proffered under Section 2413 to determine whether its admission would fail the overarching balancing test of Section 2403 and violate the due process requirement of fundamental fairness. We must assume those courts will follow the law. Any showing to the contrary must be judged future case by future case.

CHAPEL, J., dissenting.

¶ 1 A person should only be convicted by evidence of the crime with which he is charged.[1] This is a bedrock principle of American jurisprudence, and this Court has called it fundamental.[2] The State's case must stand or fall based on the evidence of the crime charged, not on evidence that the defendant may have committed a crime at some other time, or against some other person. Generally speaking the State may not prove its case by showing that a person has committed and is inclined to commit similar crimes, and thus probably committed the

---

**1.** See, e.g., *Welch v. State,* 2000 OK CR 8, 2 P.3d 356, 365; *Bryan v. State,* 1997 OK CR 15, ¶ 33, 935 P.2d 338, 356; *Burks v. State,* 1979 OK CR 10, 594 P.2d 771, 772.

**2.** *Roulston v. State,* 1957 OK CR 20, 307 P.2d 861, 867.

crime charged. For this reason, we do not admit other crimes evidence which merely shows that a defendant has a propensity to commit bad acts. Under limited circumstances other crimes evidence may be appropriate, but only as far as it addresses an aspect of the crime charged.[3]

¶ 2 This rule creates tension, particularly in cases involving sex crimes where the defendant, like Horn, commits the same or similar crimes over several years. A jury may find the evidence of these other crimes compelling proof that the defendant committed the charged crime, and the State naturally wants jurors to hear it. When dealing with sexual predators it is tempting to loosen the restrictions on evidence so jurors can hear about this propensity to commit sex crimes even where the other crimes have no connection with the charged crime. Over time prosecutors have continually attempted to introduce this kind of evidence.

¶ 3 Several years ago, responding to the increased use of this evidence in trials, this Court found that greater latitude in presenting other crimes evidence was appropriate in sex offense cases.[4] However, in determining appropriate evidentiary rules, this Court has the advantage of time. After reviewing several years of trials which allowed greater latitude and admitted (otherwise inadmissible) evidence of other crimes, we concluded in *James v. State* that this modification to the standard rules of evidence was unworkable in practice.[5] We found that the standard evidentiary rules, prohibiting admission of evidence which merely shows propensity for sex offenses rather than bearing directly on the charged crime, better protected the rights of the defendant and the State and provided for a fair trial.

¶ 4 In response to this reasoned decision, based on experience and our review of actual cases in which the use of greater latitude in admitting evidence did not achieve the fairness to which every criminal trial must as-

pire, the Legislature changed the Evidence Code to resurrect the unworkable model. Within a few months after James was handed down the Legislature provided in Title 12, Section 2413 that, in sex offense cases, evidence that the defendant has committed other sex offenses is admissible and "may be considered for its bearing on any matter to which it is relevant."[6] That last clause is particularly illuminating, because it does not require that the evidence of the other sex crimes be relevant to any aspect of the charged crime, other than to show a propensity to commit that type of crime.

¶ 5. I emphasize this clause because it skews the entire majority discussion of Horn's constitutional claims. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[7] Section 2413 provides that, where sex offenses are concerned, other crimes evidence need not have any connection to the charged offense— that is, it need not be relevant as defined in Section 2401. From the outset Section 2413 assumes that, in these circumstances, propensity evidence is appropriate and relevant in and of itself although it has no connection to the charged crime. I believe the question posed by the statute and by this case is whether that assumption is constitutional, and I conclude it is not. The majority fails to address this question at all.

¶ 6 The majority opinion takes as a given the relevance of Section 2413 other crimes evidence. The statute assumes that certain propensity evidence, otherwise inadmissible because it is propensity evidence and thus irrelevant, is admissible when a sexual assault is charged. The majority also assumes this propensity evidence is relevant, because the statute says it is, even though it is not relevant or admissible under the traditional evidence code provisions. The majority's de-

---

**3.** *Burks,* 594 P.2d at 772.

**4.** *Myers v. State,* 2000 OK CR 25, 17 P.3d 1021, 1029–30.

**5.** *James v. State,* 2007 OK CR 1, 152 P.3d 255, 257.

**6.** 12 O.S.Supp.2007, § 2413(A). In Section 2414, this was extended to crimes involving child molestation.

**7.** 12 O.S.2001, § 2401.

fense of this evidence assumes that propensity evidence should be and is relevant to prove that a defendant may commit other sex offenses. The majority relies on Tenth Circuit cases which state that "evidence of other sexual assaults is highly relevant to prove propensity to commit like crimes." [8] This, of course, is precisely what Oklahoma law has always prohibited.

¶ 7 Horn was tried after Section 2413 took effect. As part of the State's case-in-chief prosecutors introduced evidence that Horn had committed or admitted to sex offenses other than the thirty separate counts charged in the Information. This evidence was admitted under the new statutory codification of the discredited "greater latitude" rule. On appeal, Horn claims that admission of this evidence violates his rights to equal protection and due process: because he is charged with sex offenses, otherwise inadmissible evidence may be used against him that could not be used against defendants charged with other criminal offenses. To resolve this question this Court must decide whether to stand by our decision in *James*. I disagree with the majority's decision to abandon *James* in favor of the newly enacted statute. I believe this statutory crumbling of the barriers against other crimes evidence violates both due process and equal protection.

¶ 8 The statute's only purpose is to explicitly allow propensity evidence in sexual assault cases, merely to show that a defendant is likely to commit similar crimes. The majority admits this, but finds that this poses no problem because Section 2413 restates Federal Rule of Evidence 413(a). In the absence of any United States Supreme Court ruling on the issue, the majority relies on opinions from various lower federal courts which find that Rule 413(a) is constitutional. That is, rather than follow well-settled Oklahoma law, the majority prefers to rely on federal law supporting its position that propensity evidence in sex offense cases is proper and should be admitted. As the majority opinion itself notes, its author dissented in *James*. While acknowledging that Oklahoma's history of admitting propensity evidence "is ambiguous at best",[9] the majority author now is taking advantage of federal law interpreting a federal rule in order to confirm his previous dissenting view as the law in Oklahoma.

¶ 9 The majority concludes that Horn's due process rights are not violated by Section 2413. In doing so the majority narrowly restricts the fundamentals of due process to notice and the opportunity to be heard. I have disagreed with this narrow formulation in the past and continue to do so.[10] This case, and this statute, require this Court to exercise its judgment upon "interests of society pushing in opposition directions." [11] As I discuss below, as long as irrelevant propensity evidence is admitted against a defendant, the fact that he has notice of and an opportunity to be heard regarding that evidence does not cure the due process violation.

¶ 10 The majority ultimately finds that Section 2413 does not violate due process because the statute provides that the new rule "shall not be constrained to limit the admission or consideration of evidence under any other rule." [12] The majority reasons that this language ensures that "relevant propensity evidence" must be treated like other relevant evidence, subject to weighing its probative value versus its prejudice under

---

8. *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir.1998). *See also United States v. Benally*, 500 F.3d 1085, 1089–90 (10th Cir.2007). The Tenth Circuit, and the other federal cases cited by the majority, rely on Congressional legislative history for these and similar pronouncements. There is no Oklahoma legislative history before this Court and, of course, no evidence in the record to support the suggestions that propensity evidence is so accurate a predictor of future behavior that it bears special relevancy in sex offense cases.

9. Op. at 783–84.

10. *Wallace v. State*, 1995 OK CR 19, 893 P.2d 504, 518–19 (Chapel, V.P.J., specially concurring) (listing fourteen separate due process requirements found in various United States Supreme Court cases, to illustrate the variety of ways in which due process may require more than the basics of notice and opportunity to be heard).

11. *Rochin v. California*, 342 U.S. 165, 171, 72 S.Ct. 205, 209, 96 L.Ed. 183 (1952).

12. 12 O.S.Supp.2007, § 2413(C).

other Evidence Code provisions.[13] The majority concludes that, as certain procedural safeguards apply to propensity evidence in sex offense cases, due process is preserved. The procedural safeguards the majority finds sufficient are notice, an opportunity to be heard, and the possibility that propensity evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.[14] I disagree.

¶ 11 I believe that convicting someone on the basis of evidence showing he has a propensity to commit the type of crime charged is fundamentally unfair and violates fundamental conceptions of justice.[15] The State must be content with presenting evidence of the charged crime, plus any other crimes evidence which is admissible because it has a direct bearing on commission of the charged crime. Anything further, as allowed by Section 2413, violates the community's sense of fair play and decency,[16] and fails to adequately protect the rights of persons charged by the authorities with committing a crime.[17] I believe the use of propensity evidence creates a constitutionally unacceptable risk that a defendant will be convicted because he is likely to commit a particular type of crime, rather than because the evidence showed he actually did commit the crime charged. In the case of Section 2413 propensity evidence, this risk is not mitigated by the procedural safeguards the majority finds comforting, because those safeguards cannot protect

against it. This is readily apparent if one rejects the assumption, codified in the statute, that propensity evidence is admissible. If it is not, then no amount of procedural safeguard can blunt its harm.

¶ 12 I also find that Section 2413 violates the Equal Protection Clause. The Legislature may enact laws which affect citizens differently, as long as those classifications are rationally related to the achievement of the State's goals.[18] However, the Legislature may not enact a statute which impermissibly interferes with a defendant's exercise of a fundamental right or operates to the peculiar disadvantage of him as a member of a suspect class, or which is not rationally related to a legitimate state interest.[19] The latter category applies here. Such legislation cannot be arbitrary, the grounds for the different classifications must have a fair and substantial relation to the legislation's purpose, and similarly situated persons must be treated alike.[20] The connection between the statute's classification and its objective is vital because it "gives substance to the Equal Protection Clause."[21] Statutory discrimination "will not be set aside if any state of facts reasonably may be conceived to justify it."[22] The defendant has the burden to prove there is no rational basis for the statutory classification.[23] Usually, if a law advances a legitimate government interest it will be sustained, even if its rationale is tenuous, the law seems unwise, or it disadvantages particular groups of citizens—but the law cannot have the purpose of disadvantaging the group bearing its burden.[24] That is exactly

---

13. Op. at 784. The majority again relies on *Enjady*, 134 F.3d at 1432–33, and *Benally*, 500 F.3d at 1090.

14. 12 O.S.2001, § 2403.

15. *Dowling v. United States*, 493 U.S. 342, 353, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990).

16. *Rochin*, 342 U.S. at 173, 72 S.Ct. at 210.

17. *Chambers v. Florida*, 309 U.S. 227, 236, 60 S.Ct. 472, 476–77, 84 L.Ed. 716 (1940).

18. *Romer v. Evans*, 517 U.S. 620, 631, 116 S.Ct. 1620, 1627, 134 L.Ed.2d 855 (1996); *Hatch v. State*, 1996 OK CR 37, 924 P.2d 284, 289.

19. *Trim v. State*, 1996 OK CR 1, 909 P.2d 841, 844; *Clayton v. State*, 1995 OK CR 3, 892 P.2d 646, 654.

20. *Romer v. Evans*, 517 U.S. at 632, 116 S.Ct. at 1627; *Hatch*, 924 P.2d at 289; *Crawford v. State*, 1994 OK CR 58, 881 P.2d 88, 90–91.

21. *Romer v. Evans*, 517 U.S. at 632, 116 S.Ct. at 1627.

22. *McGowan v. Maryland*, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

23. *Wackerly v. State*, 2000 OK CR 15, 12 P.3d 1, 17.

24. *Romer v. Evans*, 517 U.S. at 632–33, 116 S.Ct. at 1627.

what Section 2413 does, by allowing propensity evidence against sex offenders which would not be admitted against other defendants.

¶ 13 I disagree with the majority's finding that Section 2413 advances a legitimate state interest in prosecuting sex offenses. The State certainly has a legitimate interest in convicting sex offenders. However, the State successfully convicted sex offenders for years without subjecting them to a different, and unconstitutionally looser, standard of admissible evidence than other defendants. There is absolutely no support in Oklahoma case law for any claim that sex offenses cannot be proved without recourse to otherwise inadmissible other crimes evidence.

¶ 14 The majority relies on a footnote in a Seventh Circuit case which states the federal rules were enacted to protect the public, noting that a history of similar offenses is probative for child molesters because it shows an unusual disposition not present in ordinary people.[25] The majority states that because the Legislature enacted Section 2413, it "determined that evidence of other similar crimes involving sexual assault and child molestation was probative of a defendant's propensity to commit such crimes."[26] This, again, fails to address the equal protection claim unless one assumes that propensity evidence is admissible, and further assumes that it is relevant even though it has no connection to the charged crime. The majority does both. Of course, if one assumes the statute's propensity provision is constitutional without analyzing the issue, one will find there is no constitutional violation. That is what the majority has done.

¶ 15 After finding no constitutional violations, the majority admits that the federal decisions on which it relies consistently hold that under the federal rules this propensity evidence is only admissible where specific procedural requirements are followed. While acknowledging those requirements, without which the federal courts would not

have found the federal rules constitutional, the majority states that Oklahoma state courts need not adhere to them. Instead, the majority encourages trial courts to consider several factors before admitting the evidence, hold a pre-trial hearing where a defendant objects to the evidence, and make a record of the court's consideration of the enumerated factors. The bulk of these factors go to the Section 2403 evidentiary code protections, involving proof of the propensity evidence, its relation to a material fact and how disputed that fact is, if there is less prejudicial evidence available, and whether it is likely the evidence will distract jurors or contribute to an improper verdict. Of course, these factors are worthless unless you assume propensity evidence should be admissible to show that a person is likely to commit similar crimes—without that assumption, it is not relevant to any material fact which must be proved at trial, since it has no connection to the charged crime. In addition, the record contains no such findings here and does not indicate every factor the trial court considered in making its finding that the propensity evidence was admissible. Even if one believes trial court consideration of these factors alleviates the constitutional problems (and I do not), there is no reason to find from the record that Horn had the benefit of this consideration when Section 2413 propensity evidence was admitted against him. Even using the majority's own reasoning, admitting this evidence against Horn without considering these factors on the record was error.

¶ 16 In addition to the inadmissible propensity evidence, the State presented evidence that Horn had committed the charged crimes. One might be tempted, under those circumstances, to find the error in admitting propensity evidence was harmless. I cannot do so. As I have stated before, the issue before this Court is, as always, not whether a defendant is guilty but whether he has received a fair trial.[27] Horn was convicted in part by inadmissible evidence introduced un-

**25.** *United States v. Hawpetoss*, 478 F.3d 820, 824 n. 7 (7th Cir.2007).

**26.** Op. at 786.

**27.** *Flores v. State*, 1995 OK CR 31, 899 P.2d 1162, 1165 n. 5 (Chapel, V.P.J., specially concurring); *Wallace*, 893 P.2d at 518 (Chapel, V.P.J., specially concurring).

der an unconstitutional statute. I fail to see how that procedure can be described as fair and I do not find that it was harmless. I dissent.